AGNES H. REED v. BOARD OF PARK COMMISSIONERS OF CITY OF WINONA.[1]

February 21, 1907.

Nos. 14,940—(77).

**Eminent Domain—Title to Park.**

Whether a board of park commissioners may acquire the fee in land taken under condemnation proceedings for park purposes depends upon the language of the statute under which the proceedings are taken. Unless the intention to authorize the taking of a fee clearly appears from the language of the statute, it will be construed to authorize the taking of an easement only.

[1] Reported in 110 N. W. 1119.

**Title Acquired.**

Where land is taken and appropriated to a public use against the will of the owner, the statute which authorizes the proceeding will be construed to authorize the taking of the interest only which is required by the necessities of the contemplated use.

**Obstruction of Water Course.**

A natural water course or artificial drainage channel, which exists upon land when condemnation proceedings are commenced, cannot, after the land has been taken, be closed, to the injury of the party who owns the remainder of the tract.

**Removal of Obstruction.**

If such a drainage channel is allowed to become obstructed, the owner of the adjoining land, who is entitled to have the channel kept open, may enter upon the land for the purpose of removing the obstruction.

From an award of damages in condemnation proceedings by defendant board for the taking of certain land, plaintiff appealed to the district court for Winona county. The matter was tried before Snow, J., and a jury, which awarded her $300. From an order denying a motion·for a new trial, plaintiff appealed. Affirmed.

*Henry M: Lamberton* and *Brown, Abbott & Somsen,* for appellant. *Webber & Lees* and *Earl Simpson,* for respondent.

ELLIOTT, J.

The park board of the city of Winona commenced proceedings to condemn a strip of land on the shore of Lake Winona for the purpose of making it a part of the city park system. The landowner appealed from an award of damages in her favor, and the jury awarded her $300 for the land already taken, and found that the remainder of the tract of land was not damaged. The appeal is from an order denying a motion for a new trial. The assignments of error question the correctness of instructions given and requests denied.

1. The appellant is the owner of about one hundred forty acres of land lying east of Winona and south of a creek which is the outlet of the lake. The park board proposes to take a strip of this land (in all about 41.67 acres) along the shore of the lake, which will separate the remainder of the tract from the lake. The appellant claims that twelve years before the proceedings were commenced a ditch was dug across the strip of land which the respondent seeks to condemn for the pur-

pose of draining the land into the lake. It is contended that the taking of the strip of land in question will result in the permanent closing of this ditch and thus injure the remainder of the land. It is at least doubtful whether the damages which might result from the possible closing of this ditch are not too remote and speculative to be considered. However this may be, the instructions to which exception is taken were correct upon the appellant's own theory of damages.

Under these proceedings the city will acquire only an easement in the land, the extent of which will be determined by the necessities of the use for which it is taken. There is no question but that the state may authorize the taking of the fee of real property under the power of eminent domain. This right need not be granted in express terms, but it must clearly appear, either expressly or by fair implication. In most instances an easement only is taken, and the fee remains in the owner, who thus retains the right to use the land for every purpose not incompatible with the use for which it was appropriated. As the land is taken and appropriated to a public use against the will of the owner, the statute will be construed to authorize the taking of the interest only which is required by the necessities of the contemplated use. Washington v. Prospect, 68 N. Y. 591.

There is some authority for holding that the proper maintenance of a public park requires that the municipality shall own the fee of the lands (Driscoll v. City, 75 Conn. 92, 52 Atl. 618); but the rule most consistent with principle is that an easement only is acquired in property which is condemned and taken for such purpose. No other interest is necessary to the use. See McCombs v. Stewart, 40 Oh. St. 647; Devine v. Lord, 175 Mass. 384, 56 N. E. 570; Newton v. Manufacturers' Ry. Co., 115 Fed. 781, 53 C. C. A. 599. In some cases statutes relating to parks have been somewhat liberally construed in favor of the grant of the power to take a fee title. See Brooklyn v. Armstrong, 45 N. Y. 234, 6 Am. 70.

By the statute under which the board of park commissioners was proceeding in this case the board is

> Authorized and empowered to receive as gift or donation in whole or in part and to acquire by purchase or donation, through the agency of its board of park commissioners, for the use by

the public of lands lying within the corporate limits of such city, and if by condemnation, then in the manner hereinafter set forth, and to thereafter hold and control and from time to time lay out, alter, improve, operate and maintain such lands for public parks and parkways. Chapter 293, p. 513, Laws 1903.

The right to take the fee is not expressly granted by this statute, nor is it conferred by fair implication. It is not necessary that the board should hold the fee of the land to enable it "to thereafter hold and control, and from time to time lay out, alter, improve, operate and maintain such lands for public parks and parkways." The easement acquired is perpetual, and is broad enough to enable the board to do whatever is necessary for the operation and maintenance of a park or parkway, and this is all that the necessities of the case require. The fact that the resolution announced the intention to acquire the fee of the land is of no consequence. The statute, and not the resolution, determines the estate which can be acquired under such proceedings.

2. The trial court instructed the jury that the city of Winona would have no right to obstruct or cut off any water course, either natural or artificial, which existed upon the land when the condemnation proceedings were commenced; that

Even though the city should acquire the premises proposed to be taken from the appellant, it would have no right thereafter to interfere with her drainage ditch or other passageway for water which she had upon said premises when such proceedings were begun.

The jury was also instructed that after the taking of the land the city would have no legal right to obstruct the flow of water from the remainder of appellant's land, except in so far as it might be reasonably necessary in improving the land taken for park purposes, and that if, after the land was taken, the ditch which existed when the proceedings were commenced should become obstructed, the appellant would have the right to have it cleaned out, whether upon the city's

land or her own. Requests embodying the contrary of these instructions were refused.

The issue presented is whether, after the city had acquired the strip of land for park purposes, it could close the drainage ditch across it which existed when the condemnation proceedings were commenced. If it could not, the owner of the land would have the right to enter upon the land taken by the city and clean out the ditch when necessary. It appears that the ditch in question was opened a number of years before the condemnation proceedings were commenced, but it had not been maintained in a condition to be of any value for drainage purposes. In fact, it seems to have been abandoned, and to have become entirely filled up. But, assuming that it still existed, as claimed by the appellant, the city would take the land subject to the existing conditions in this respect, unless they were inconsistent with the use of the land for park purposes. It is perfectly clear that the maintenance of the drainage ditch in question, or, if the land was used for a parkway, of a culvert or drainage pipe in lieu thereof, would in no way interfere with the proper and reasonable use and enjoyment of the land as a public park and parkway. The city would acquire no greater right to close an artificial drainage channel which existed when it commenced condemnation proceedings than would have been acquired by an individual who purchased the land. In regard to drainage and the disposition of surface water, a town has the same rights and is subject to the same liabilities as an individual. Oftelie v. Town of Hammond, 78 Minn. 275, 80 N. W. 1123. "A city or town which constructs a street across a water course without proper culverts or drains, * * * so as to cause the water to flow back upon and injure the land of another, is liable to an action of tort to the same extent that any corporation or individual would be liable for doing the same acts." Gould, Waters (3d Ed.) § 250, and cases there cited. If this artificial drainage ditch had existed for twelve years, as claimed by the appellant, the city, after acquiring an easement in the land for park purposes by condemnation proceedings, would have no right unnecessarily to close the channel and thus obstruct the flow of the surface water.

The principle is recognized in numerous cases. In Sharpe v. Scheible [162 Pa. St. 341, 29 Atl. 736], 42 Am. St. 838, it was said that

"if an owner of land digs a well-defined surface drain across it, and then sells and conveys a higher portion of the land to one party and the lower part to another, the latter takes subject to a servitude to receive the surface water flowing in such drain, and is liable in damages. to the former for obstructing such flow." In Moran v. McClearns, 63 Barb. 185, it was held that an overseer of highways had no right to change the natural course of surface-water drainage for the purpose of making repairs on a highway. In Woodring v. Forks Township, 28 Pa. St. 355, 70 Am. Dec. 164, it was held that the owner of the soil over which the public had a highway had the right to cut a way across the road for the purpose of draining his land. In Dygert v. Schenck, 23 Wend. 446, 35 Am. Dec. 575, this right of the landowner was recognized, subject to the requirement that he should dredge the ditch and keep the highway in as good and safe condition for travel as it was in before he interfered with it. See, also, Perley v. Chandler,. 6 Mass. 454, 4 Am. Dec. 159; City v. Proprietors, 104 Mass. 18. If the city, after acquiring the land, could not legally close the ditch, the landowner would have the right, if necessary, to enter upon the land and remove the obstructions. City v. Brocking (Ky.) 87 S. W. 1086. As said in McMillan v. Cronin, 75 N. Y. 474: "The very existence of a right of way precludes the idea that the party who has the right cannot repair or keep the way in order. * * * Can it be claimed that there is no power to repair it and put it in order? Clearly not, for the right to repair is incident to the easement, and without it the way might become useless and of no benefit. * * * Washburn, Easements, 654. * * * In fact the grantee of a private way is bound to keep it in repair."

If the owner of an easement over the land of another has this right, it is certain that the owner of the fee which is subject to an easement has the right to see that the enjoyment of the easement does not unnecessarily injure his adjoining lands. "Each proprietor," says Gould, "has a natural easement in the land below for the passage of the water in the natural channel of the stream away from his land, and may enter upon the land of a lower proprietor for the purpose of clearing the channel from obstructions to the flow of the water. This privilege arises from the necessity of the case, and * * * is to be exercised * * * in such a manner as to cause no unnecessary damage to the

owner of the land below." Gould, Waters (3d Ed.) § 366; Pico v. Colimas, 32 Cal. 578; Hotchkiss v. Young, 42 Or. 446, 71 Pac. 324; ~mmond v. Woodman, 41 Me. 177, 66 Am. Dec. 219.

The order from which the appeal was taken is therefore affirmed.