PETER FELT and Others v. JOHN ELMQUIST and Another.[1]

March 27, 1908.

Nos. 15,520—(192).

**Public Nuisance.**

The right of an individual suffering peculiar injury to abate a public nuisance, as an obstruction in a drainage channel, under some circumstances, is recognized by the law; but the right to exercise that extrajudicial remedy is not absolute.

**Injunction.**

In this case, a long public ditch, the legal validity of which was subject to controversy, became obstructed at its head, the artificial outlet of a considerable lake, and also at a point in its course some miles south. The result of defendants' threatened act of removing the obstruction at the outlet would have been to have flooded plaintiffs' cultivated lands. It is *held*, under the circumstances of this case, in view especially of the considerable number of legal questions involved, that the trial court properly granted an injunction restraining the defendants' threatened removal of the obstruction at the outlet of the lake, whereby defendants were left to their ordinary remedies in the courts.

Action in the district court for Kandiyohi county to enjoin defendants from reopening a public ditch. The case was tried before Qvale, J., who made findings and ordered judgment for plaintiffs. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*Geo. H. Otterness* and *C. A. Fosnes,* for appellants.

*Samuel Porter,* for respondents.

JAGGARD, J.

This is an appeal from the order refusing a new trial in a proceeding in which the trial court granted an injunction enjoining the defendants from opening an artificial outlet through a bank to Lake Waconda.

The facts, as found by the court, construed in the light of the testimony, were briefly these. Lake Waconda was a large, deep lake meandered by the United States government. Its natural outlet carried water easterly and northeasterly into Little Kandiyohi lake; thence

[1] Reported in 115 N. W. 746.

104 M.—3

in a southwesterly direction into Lake Fanny; thence southerly into Big Kandiyohi; then southeasterly into the South Fork of Crow river. The lands of the defendants adjoined Little Kandiyohi lake and the outlet from Little Kandiyohi lake into Lake Fanny. The lands of plaintiffs lay to the south of Lake Waconda. The ditch in issue purported to have been constructed pursuant to the provisions of chapter 394, p. 800, Laws 1895. The third division of it, involved here, left Lake Waconda on the north and via Lake Fanny entered Big Kandiyohi on the south. It was not, however, constructed as surveyed, nor as contemplated by the legislature, especially in this: That that part of the ditch from the starting point to what is known as "Stephen's place," a distance of over four miles, was not constructed at all. From Lake Waconda to Stephen's place, little, if any, work was done towards the construction of a ditch. Over that course there had been previously built a county ditch, which had caved in and become obstructed. As a drain it was of no practical value. For two years after its construction this division of the ditch answered its purpose as a drain; but thereafter it was allowed to fill up, so that the flow of water was obstructed. In addition to this southerly obstruction, another obstruction to the north formed at the artificial outlet from Lake Waconda itself. The bottom of the cut or opening through the bank of that lake was on a level with the bottom of the natural outlet of the lake. A concrete bed was put into the bottom of the cut. The ditch had a fall of about three feet in a distance of about ten rods after leaving the lake. In course of time this artificial outlet became obstructed by natural agencies. No water ran out of the lake through the artificial outlet over the concrete bed since the year 1898 until in May, 1906. Defendants then removed that obstruction to relieve their own lands of waters discharged through the natural outlet of Lake Waconda. The result was that the lake at that time had reached a height of fully three feet above the level of plaintiffs' lands, and backed up near the south bank of Lake Waconda, so that the land lying between that bank and Lake Fanny was covered with water to an average width of eighty rods and to a depth in places of three to four feet. Plaintiffs closed the opening made by defendants of the artificial outlet, and brought this action to restrain defendants from threatened removal of the obstruction.

The record suggests many questions of law, as these: Was the statute under which the ditch was attempted to be constructed constitutional? If not, was the ditch constructed in accordance with the statute? Were plaintiffs estopped by deeds which they had executed, or damages which they had received, from questioning the validity of that ditch? Generally, and more particularly as to these defendants, did the obstruction of the natural outlet constitute a nuisance which the defendants had a right to abate? Did the defendants show such a particular interest by way of damages peculiar to themselves as to justify their resort to self-help? What effect did the practical abandonment of the ditch for many years have upon the rights of the parties? It would be obviously improper at this time to consider or to determine these questions. The immediate question is whether the court abused its discretion by granting the injunction.

The right of the individual suffering peculiar injury to abate a public nuisance under some circumstances is unquestioned. See, for example, Reed v. Board of Park Commrs. of City of Winona, 100 Minn. 167, 110 N. W. 1119. But it by no means follows that this extrajudicial remedy exists as a matter of absolute right. The nuisance must be sufficiently urgent to justify private individuals in redressing the wrong by their own power, without the more commendable resort to judicial authority. This summary method of redressing a grievance is regarded with jealousy, and is authorized only in cases of particular emergency requiring more speedy remedy than can be had by the ordinary proceedings at law. Joyce, Nuisance, § 370. And see Moffett v. Brewer, 1 G. Greene (Iowa) 348, 350, per Greene, J. That under certain circumstances a property owner suffering special injury may abate a nuisance in a ditch by no means sustains the position that he will be legally justified in so doing under all circumstances. For example, would he be justified in destroying an embankment which held back enormous quantities of water, and in releasing such a dangerous instrumentality into a ditch, whereby not only property, but lives, of an entire community would be certainly endangered? It would be very easy to suggest an extreme in which such an act might even be criminal. The present is not such a case.

But the trial court found, and was justified in finding, that there was no reasonable necessity for the opening of the artificial outlet un-

til the ditch and watercourse into Big Kandiyohi lake was first cleared of obstructions, so as to admit of a fair drain in that direction. It also appeared that the waters discharged through the outlet came through with such velocity and in such destructive quantities that, unless prevented, they would have flooded great portions of the cultivated fields of the plaintiffs, and have entirely destroyed crops of grain growing there, beside doing other damage. Lake Waconda covered about three sections of land and was from seven to fifteen feet deep, and was about three feet higher than the surface of the waters of Lake Fanny. A large part of this entire body of water would have been drained off, if defendants' act had not been restrained. Under these circumstances, we are of opinion that the trial court was not in error in denying the existence of defendant's absolute and unqualified right to the abatement of a nuisance, and in leaving him to resort to the traditional or any other legal remedies which the law provides.

Affirmed.

On May 28, 1908, the following opinion was filed:

PER CURIAM.

In defendants' motion for reargument it is urged that it was not "a discretionary matter with the court below in granting a permanent injunction, because in the matter of granting an injunction the court must not exercise its discretion the same as when a temporary injunction is sought." The injunction was, however, permanent only as to summary abatement by defendants' personal acts, i. e., as to the extrajudicial remedy of self-help. In the last analysis it was temporary because the legal questions involved were left open for future determination. It did not purport to determine all the rights or to terminate all the remedies of the parties. The judgment was affirmed on the merits and on the ground stated in the opinion that defendants had no legal right under the facts disclosed to abate the construction of the ditch.

Motion for reargument denied.