OLE VOLDEN AND OTHERS v. GEORGE A. SELKE,
COMMISSIONER OF DEPARTMENT OF
CONSERVATION, AND OTHERS.

87 N. W. (2d) 696.

January 24, 1958—No. 37,288.

*Nelson & Oyen* and *John P. Nelson,* for appellants.

*Miles Lord,* Attorney General, and *Melvin J. Peterson,* Deputy Attorney General, for respondents.

DELL, CHIEF JUSTICE.

This is an action for a declaratory judgment wherein plaintiffs seek to have themselves declared the owners in fee of certain tracts of land in Chippewa County, Minnesota, subject to an easement for flowage and reservoir purposes. The lower court found for the defendants, and from the order denying plaintiffs' motion for amended findings of fact and conclusions of law or in the alternative for a new trial, this appeal was taken.

The present case arises out of condemnation proceedings commenced in 1935 in Chippewa County to acquire land for water storage and flood-control purposes in the Minnesota River valley and for restoration of Lake Lac qui Parle (hereafter referred to as the Lac qui Parle project). The State of Minnesota, by its attorney general, commenced an action in the district court of said county to acquire the fee title to the necessary property. A part of the land (about 300 acres) was owned by one John O. Volden and subsequently by his estate. Commissioners were appointed pursuant to statute to ascertain the amount of damages which the various landowners would sustain, and they determined that the fee interest in this particular property was worth

$7,782.40. An appeal was taken from this award by John O. Volden, and after his death, by the executor of his estate, who was substituted in his place. Upon review, a compromise was reached whereby the award was increased to $13,500 by stipulation in writing, entered into between the state and the executor of the Volden estate and his attorneys. Thereunder the state purported to acquire the fee interest and the right to enter a final certificate as to the property, and the Volden estate was permitted to use the land for farming purposes in 1937 and to have first right to lease the property thereafter for farming purposes not inconsistent with the Lac qui Parle project. The stipulation was confirmed by the court and incorporated into the final certificate which vested fee title to the property in the state. No appeal was taken, at least in so far as the Volden property was concerned. In 1950 the state conveyed all its flowage rights in the land to the United States, but reserved to itself all rights which did not conflict with the easement which the Federal government had received, including the fee. In 1955 the Executive Council of the state authorized defendants Duininck Brothers and Gilchrist to remove gravel from the premises for use on state highways.

Thereafter, plaintiffs, as heirs of John O. Volden, instituted the present action. It is their position, both in the trial court and on appeal, that the state needed only an easement of flowage to accomplish its purpose under the authorizing statute (L. 1935, c. 51) and that, consequently, the acquisition of any greater interest was invalid. We are thus brought to the single question which this case presents: Was the State of Minnesota authorized to acquire the fee interest in this property under the statute in question?

■ The major provisions of that statute are contained in § 2, which is relevant here. It provides:

"In extending work relief or re-employment for needy, destitute and disabled persons within the State of Minnesota, the [Executive] Council may undertake projects involving flood control, water supply, water diversion, control of erosion, reforestation and afforestation, and recreation and any other project which will aid in the conservation and development of the natural resources of the State and for the promotion and conservation of the health, safety and general welfare of the peo-

ple of the state.

"The Council is authorized to acquire by gift, purchase, condemnation proceedings under Mason's Minnesota Statutes of 1927, Chapter 41, as amended, or otherwise, any land needed to carry on the work relief and employment herein provided for and, in appropriate cases, to convey land to the United States needed for projects financed in whole or in part by the United States."

Clearly the language of the statute, taken by itself, is broad enough to empower the state to acquire a fee interest. The word "land" has been defined to include any interest therein.[1] Moreover, plaintiffs have conceded all along that, if the fee had been needed, it could have been taken.[2] They argue for a restrictive construction of the language whereby the words "any land" would be modified by the phrase "needed to carry on the work relief and employment herein provided for * * *." We cannot accept their contention.

■ L. 1935, c. 51, § 2, must be construed as a whole. The purposes set forth in the first paragraph envision the undertaking of comprehensive programs for the development and conservation of the state's natural resources. Admittedly this was depression legislation designed to put funds into the pockets of the unemployed. But it cannot be said that the sole purpose of these projects was to promote work for work's sake. Rather it was contemplated that the finished products would have a permanent value and would inure to the benefit of the people of this state.

Among the enumerated projects in the first paragraph are flood control, water supply, water diversion, control of erosion, reforestation and afforestation, and recreation. These are followed by a phrase which be-

---

[1] Zumstein v. Consol. Coal & Min. Co. 54 Ohio St. 264, 271, 43 N. E. 329, 330; see, 24 Wd. & Phr. (Perm. ed.) p. 143.

[2] At the trial, plaintiffs' counsel took this position: "* * * I claim that under the statute the executive council did not have the authority to acquire the fee for the purposes for which it was put. * * * If they would have then required [the fee] for the purpose, then they would have had the authority, * * *." On appeal, during oral argument, counsel answered the following question in the affirmative: "If the fee had been needed, could it have been taken?"

gins "and any other project * * *." The word "and" is inclusive; its use—rather than the use of another word, such as "or"—is significant. It looks to the initiation of any one of the enumerated activities or perhaps several or even all of them in a given instance. A close examination of the overall plan for the Lac qui Parle project, as contained in the state's original petition, discloses that the land was to be used to restore "Lac qui Parle Lake and other lakes and surrounding swamps and marshes" and "to create and perpetually maintain a reservoir for the storage and adequate supply of water * * * and to perpetually regulate and control floods * * * to build, erect and perpetually maintain dams, dikes, spillways and embankments * * * and other works as shall be necessary to perpetually maintain the waters of the reservoir created thereby at an established elevation not to exceed 945 feet sea level datum * * *."

Perpetual maintenance of the project by the state strongly supports the inference that more than a work-relief project was contemplated, and the acquisition of a fee interest would be in accord with those plans. Plaintiffs err in attempting to sever the reservoir and water-storage phase of the program from the totality which is involved.[3] But what is more disturbing is their argument that, at the precise time that the state begins to condemn property, it must know exactly what use is to be made of all the land in a given tract; that it can take no greater interest in that land than the exigencies of the moment require; and that, if it acquires any larger interest, then it does so at its peril. Such an interpretation would unduly hamper public agencies. The process of acquiring property by condemnation is time-consuming, and each time a relevant technological improvement were made or more reliable data obtained, the state would be forced to reappraise and readjust its prior plans. We cannot interpret this statute to condone such an arrangement.[4]

---

[3] This distinguishes Warm Springs Irr. Dist. v. Pacific Live Stock Co. (9 Cir.) 270 F. 560, cited by appellants, wherein only reservoir purposes were involved.

[4] In re Condemnation by Dairyland Power Co-op. 248 Minn. 556, 82 N. W. (2d) 56; Northern States Power Co. v. Oslund, 236 Minn. 135, 51 N. W. (2d) 808, 52 N. W. (2d) 717; Burnquist v. Cook, 220 Minn. 48, 62, 19 N. W. (2d) 394, 401.

■ We do not mean to imply that this court now abdicates its duty to determine in a particular case whether or not the taking of designated property is necessary for the purposes of the proposed enterprise as set forth in the enabling statute.[5] That is a matter of statutory construction. We do say, however, that we will not encroach upon the sphere in which the legislature alone may act, and we repeat now what we said earlier in State, by Peterson, v. Bentley, 216 Minn. 146, 153, 12 N. W. (2d) 347, 352:

"* * * The legislature can take private property against the will of the owner only for public use and after just compensation to the owner has been paid or secured. Except as restricted and controlled by these two requirements, the power of the legislature to take private property is unlimited and its determination so to do conclusive. Whether the use be public and whether proper compensation has been made are judicial questions, the final determination of which rests with the courts. All other questions involved in the taking of private property are of a legislative nature; and the determination of such questions by the legislature, or by an agency established by and acting under the authority of the legislature, is final and cannot be reviewed by the courts."[6]

■ The Executive Council was properly authorized to act under this statute. Its decision to undertake the Lac qui Parle project was final; its decision to acquire a fee interest in the Volden property was reasonable. The record discloses that all of the premises are located at or below 945 feet sea level datum, the level sought to be maintained. At one time or another, all of the property has been under water. Forty acres are regularly flooded; another 60 acres are regularly under water each spring and at times of high water; and the balance of the

---

[5]Minnesota Canal & Power Co. v. Fall Lake Boom Co. 127 Minn. 23, 28, 148 N. W. 561, 562; see, Burnett v. Central Nebraska Public Power & Irr. Dist. 147 Neb. 458, 468, 23 N. W. (2d) 661, 668. And see Mason St. 1927, § 6543, which is identical with M. S. A. 117.07: "* * * If the proposed taking shall appear to be necessary, and such as is authorized by law, * * *."

[6]State ex rel. Smith v. Van Reed, 125 Minn. 194, 196, 145 N. W. 967, 968, and cases cited therein.

land is flooded at times of abnormally high water. If only flooding were involved, a flowage easement might have sufficed, but the state proposed to build and did build dams and other appurtenances on nearby property. Certainly it was entitled to acquire fee interests in the premises on which these structures stand, and we think it was likewise entitled to acquire the fee in the Volden property for any other projects which might subsequently be reasonably necessary.[7] Furthermore, recognizing the state's right to acquire a fee is in accord with the provision in the second paragraph of § 2 of the statute, which authorizes the conveyance of land to the United States in appropriate cases. Although only a flowage easement has been transferred thus far, if it had been necessary or should it become necessary in the future, the state could transfer the fee for Federal projects.

Referring again to the statute, it was conceded during the oral argument that the state might have been the donee of a gift of the fee in the premises and it would not have been obliged to disclaim it for a lesser interest. It seems equally clear that the state might have purchased a fee and acquired a deed and that that action could not be challenged. It would be doctrinaire indeed to hold that only in condemnation proceedings was the state proscribed from such an acquisition. Several sections of Mason St. 1927, c. 41, specifically contemplate the taking of fee interests in some instances,[8] and a court decree or certificate prepared by the petitioning attorney is as valid as a deed would be to vest title in the state.[9]

We do not believe that this decision violates the principles announced

---

[7]In re Condemnation by Dairyland Power Co-op. 248 Minn. 556, 82 N. W. (2d) 56; Northern States Power Co. v. Oslund, 236 Minn. 135, 51 N. W. (2d) 808, 52 N. W. (2d) 717; Burnett v. Central Nebraska Public Power & Irr. Dist. 147 Neb. 458, 468, 23 N. W. (2d) 661, 668. (If Warm Springs Irr. Dist. v. Pacific Live Stock Co. [9 Cir.] 270 F. 560, 563, announces a doctrine of strict necessity, it is contrary to our decisions and we disapprove it.)

[8]See the references to fee interests in Mason St. 1927, §§ 6543, 6554, 6557-1(d).

[9]Mason St. 1927, §§ 6553, 6557-1(d), (M. S. A. 117.17, 117.20[4]); State, by Burnquist, v. Fuchs, 212 Minn. 452, 453, 4 N. W. (2d) 361, 362; State, by Youngquist, v. Hall, 195 Minn. 79, 83, 261 N. W. 874, 876.

in Smith v. City of Minneapolis, 112 Minn. 446, 128 N. W. 819, or Reed v. Board of Park Commrs. 100 Minn. 167, 110 N. W. 1119. Both cases involved statutory interpretation. In the former, this court construed a municipal charter containing the words "for all purposes for which the city may ever have occasion to use the same" and applied it to an 8-foot strip of land which had been condemned to construct an alley. We concluded that the property could be used only as an alley or street, and since historically the easement was all that was required for this purpose, the city could take that only. However, we carefully pointed out that, if other wording such as "the city shall become vested with the title * * * absolutely" had been used, then the city would have acquired a fee title, notwithstanding the single use which could have been made. Even under the actual wording of the charter, a different result might have been reached had the land involved been a plot or a tract for which uses other than an alley were available.

In the Reed case, we declined to construe a statute which permitted the condemnation of private property for park purposes to authorize the acquisition of a fee interest, although there was authority to the contrary in other jurisdictions. We were again careful to note, however, that "the taking of the fee of real property under the power of eminent domain * * * need not be granted in express terms, but it must clearly appear, either expressly or by fair implication."[10] We conclude that the language of the statute in question includes the taking of a fee interest, certainly by fair implication, if not expressly.[11]

Our position is fortified when the events of this case are reviewed. Acting under the statutory authority, the state petitioned the court to acquire the fee title to the Volden property. The notice of hearing on the petition recited that a fee title was to be taken. The commissioners' award was based upon the damages sustained by the taking of the fee, and the appeal was based upon the inadequacy of that amount to com-

[10]Reed v. Board of Park Commrs. 100 Minn. 167, 169, 110 N. W. 1119.

[11]Our previous decisions recognize by implication that the state could acquire a fee in these premises and in some cases did. State, by Peterson, v. Anderson, 239 Minn. 144, 145, 58 N. W. (2d) 257, 258; State, by Peterson, v. Bentley, 224 Minn. 244, 245, 28 N. W. (2d) 179, 180, 770.

pensate for the loss of the fee. When the matter was settled, the stipulation recognized that the state took the fee and the executor of the Volden estate was paid on the basis of a fee. The stipulation provided for the entering of a final certificate with the same effect as if no appeal had been taken and for the estate's right to lease the land for farming. The final certificate provided that the state had acquired a fee simple absolute. No appeal was taken to this court although one was available.[12] No question as to the propriety of the condemnation proceedings was ever raised. Until 1955, plaintiffs acknowledged their status as lessees. They paid no property taxes, although that would have been one way of asserting their claim of ownership. In short, all the parties to this proceeding have at all times accepted the vesting of the fee in the state.[13] Only when the gravel was discovered did the plaintiffs come forward with this claim, and even then they did not offer to return the difference between the value of the fee and the easement. They cannot now challenge the prior proceedings.

Affirmed.

---

[12]State, by Peterson, v. Anderson, 244 Minn. 581, 69 N. W. (2d) 688; State, by Burnquist, v. Fuchs, 212 Minn. 452, 453, 4 N. W. (2d) 361, 362; King v. Board of Education, 116 Minn. 433, 133 N. W. 1018.

[13]Cf. Burnett v. Central Nebraska Public Power & Irr. Dist. 147 Neb. 458, 463, 23 N. W. (2d) 661, 665.