STATE ex rel. LYNDON A. SMITH v. EFFIE K. VAN REED.

SAME v. CLARENCE LESURE and Others.

SAME v. JOHN H. KNAPP and Others.[1]

March 13, 1914.

Nos. 18,599—(314).

**Eminent domain.**

1. The power of eminent domain inheres in the state as an attribute of its sovereignty, and is vested in the legislature. The only limitations upon this power are that private property can be taken only for a public use and that just compensation to the owner must be first paid or secured.

[1] Reported in 145 N. W. 967.

**Same — University of Minnesota.**

2. The University of Minnesota is a public institution maintained and conducted by the state in the exercise of its governmental functions, and the taking of private property for the purposes of the university is a taking for a public use.

**Act constitutional.**

3. Chapter 257, Laws 1913, authorizing the construction of a railway connecting the university farm with the street-car system of the city of Minneapolis, and with the belt-line railway operated by the Minnesota Transfer Railway Co., is constitutional.

In the matter of the application of the state of Minnesota, by its attorney general, to the district court for Ramsey county, for the condemnation of certain lands, Effie K. Van Reed, Louis S. Tainter and others, trustees under the will of Andrew Tainter, deceased, Vallie A. Knapp and others, trustees under the will of John H. Knapp, deceased, and others, appeared specially for the purpose of objecting to the jurisdiction of the court on the ground that Laws 1913, c. 257, was unconstitutional, and objected to the proceedings, and prayed that the petition for condemnation be dismissed. From an order, Catlin, J., denying the motions of objectors to dismiss the proceedings, they appealed. Affirmed.

*Freeman & Freeman* and *L. K. Eaton,* for appellants.

*Lyndon A. Smith,* Attorney General, and *R. G. O'Malley,* Special Counsel, for respondent.

TAYLOR, C.

For the purpose of providing facilities for transporting persons, supplies and materials between the university farm and the university campus, and from intermediate points to either the campus or the farm, and from either the campus or the farm to intermediate points, the state seeks to condemn the right of way for a railway connecting the university farm with the street-car system of the city of Minneapolis, and with the Belt Line Railway, operated by the Minnesota Transfer Railway Co. The authority therefor is found in the following statute: "The board of regents of the State University is hereby authorized to provide adequate means for safe, con-

venient and rapid transportation of persons, supplies and materials between the university farm and the university campus and the transportation of persons from intermediate points to either the university campus or the university farm and from the university campus or university farm to intermediate points and for the transportation of supplies and materials to and from the university farm by means of a connection with the Belt Line Railway operated by the Minnesota Transfer Railway Company; and to that end the said board of regents is hereby authorized to acquire by gift, purchase, condemnation or otherwise, such rights of way as may be deemed necessary, and to construct, maintain and operate lines of railway thereon and to make such contract or contracts with any railway company or companies for trackage rights, track connections and motive power or for the hiring of rolling-stock or for the operation of the same as may be found necessary or expedient in carrying out the provisions and intent of this act." Chapter 257, p. 354, Laws 1913; section 3059, G. S. 1913.

The attorney general duly made an application to the district court, in the name of the state, for the appointment of commissioners to appraise and assess the damages to the several property owners on account of the taking of such right of way. At the hearing, certain property-owners challenged the jurisdiction of the court, and insisted that the above statute is unconstitutional, and that the power of eminent domain cannot be used in the manner and for the purpose contemplated. All such contentions were overruled, and commissioners were appointed to assess and determine the damages. The objecting property owners appealed.

1. The power of eminent domain, or the right to take private property for public purposes, inheres in the state as an attribute of its sovereignty, and is vested in the legislature. The legislature can take private property against the will of the owner only for public use and after just compensation to the owner has been paid or secured. Except as restricted and controlled by these two requirements, the power of the legislature to take private property is unlimited and its determination so to do conclusive. Whether the use be public and whether proper compensation has been made are judi-

cial questions, the final determination of which rests with the courts. All other questions involved in the taking of private property are of a legislative nature; and the determination of such questions by the legislature, or by an agency established by and acting under the authority of the legislature, is final and cannot be reviewed by the courts. School District No. 40, Rock County v. Bolstad, 121 Minn. 376, 141 N. W. 801; Langford v. County Commrs. of Ramsey County, 16 Minn. 333 (375); Weir v. St. Paul, S. & T. F. R. Co. 18 Minn. 139 (155); In re St. Paul & Northern Pac. Ry. Co. 37 Minn. 164, 33 N. W. 701; Commrs. of State Park v. Henry, 38 Minn. 266, 36 N. W. 874; State v. Rapp, 39 Minn. 65, 38 N. W. 926; Fairchild v. City of St. Paul, 46 Minn. 540, 49 N. W. 325; Knoblauch v. City of Minneapolis, 56 Minn. 321, 57 N. W. 928; Fohl v. Common Council of Village of Sleepy Eye Lake, 80 Minn. 67, 82 N. W. 1097; Minneapolis & St. Louis R. Co. v. Village of Hartland, 85 Minn. 76, 88 N. W. 423; State v. District Court of Ramsey County, 87 Minn. 146, 91 N. W. 300; State v. Board of County Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216.

2. The legislature has expressly authorized the construction of the proposed railway, and the condemnation of "such rights of way as may be deemed necessary" therefor. The first question presented is whether the taking of land for a right of way between the University campus and the University farm is appropriating it to a public purpose.

The University of Minnesota is in no sense a private corporation. It is a state institution established, controlled and carried on by the state itself. It had its beginning in chapter 3, Laws 1851, enacted by the second territorial legislature. This act provided "that there shall be established in this territory an institution, under the name and style of the University of Minnesota," the object of which shall be "to provide the inhabitants of this territory with the means of acquiring a thorough knowledge of the various branches of literature, science and the arts." The act also provided where the university should be located, of what it should consist, and for a board of regents to handle its business affairs, and to institute, conduct and govern it. The act also provided that the regents should be elected by the legis-

lature; that the salaries fixed for the professors and officers of the university should be submitted to the legislature for approval or disapproval; and that the regents should make a full report to the legislature at each regular session thereof. The act also constituted the regents a body corporate, defined and limited their powers and duties, and expressly reserved the right to "alter, amend, modify or repeal" the act at any time. It is clear from the terms of this act that the legislature did not create an independent corporation, but established a public institution over which it retained and proposed to exercise full and complete power and control. The Constitution, subsequently adopted, contains the following section: "The location of the University of Minnesota, as established by existing laws, is hereby confirmed, and said institution is hereby declared to be the University of the State of Minnesota. All the rights, immunities, franchises and endowments heretofore granted or conferred, are hereby perpetuated unto the said university, and all lands which may be granted hereafter by Congress, or other donations for said university purposes, shall vest in the institution referred to in this section." Article 8, § 4. This constitutional provision did not change the character of the university, nor make it a private or independent corporation; but perpetuated it as a public institution, and took from the legislature the power to discontinue, or abolish it, or to convert it into a private corporation. The university has been reorganized from time to time, and its scope and activities much extended; but it has always been recognized as a public institution, forming a part of the educational system of the state, and no attempt has ever been made to give it any other or different character. In Regents of State University v. Hart, 7 Minn. 45 (61), it was held that the board of regents were a public corporation; but it was also held that such corporation was merely an agency of the state to exercise certain limited and specified powers in the manner and for the purposes prescribed by law. The status of the university as indicated in this decision has stood unquestioned for more than 50 years.

That the state may take private property for the purpose of enabling it conveniently to perform its governmental functions, has never been doubted. It may take such property for public schools,

for a state house, for state prisons, for state hospitals, for state armories and arsenals, and for other public institutions established and conducted by the state in its capacity as sovereign.

The state in its governmental capacity maintains and conducts the university as a part of its educational system, and may condemn for its use any property needed for the purpose of providing the institution with proper and convenient facilities for performing its work. The taking of property for such purposes is a taking for public use. That the purpose in the present instance is merely to provide quick and convenient transportation between two parts, or departments, of the institution does not change the character of the use; at least unless it be shown that, by reason of the relative location of such departments, or by reason of the sort of work to which they are respectively devoted, such facilities cannot serve legitimate purposes. The propriety of furnishing such facilities is a legislative question, and when determined by the legislature such determination is binding and conclusive upon the courts.

3. Appellants' contention that the act authorizing the construction of this railway transgresses the limitations which the Constitution imposes upon the power of the legislature cannot be sustained. Most of the objections urged are based upon the assumption that the university is a private corporation. As it is not a private corporation, but a public institution conducted by the state in its sovereign capacity, such objections are devoid of force. Appellants insist that the act violates the constitutional provision prohibiting the state from engaging in works of internal improvement; but that provision has no application to works used by or for the state in the performance of its governmental functions. Rippe v. Becker, 56 Minn. 100, 57 N. W. 331, 22 L.R.A. 857. If it applied to such matters, it would have prevented the state from constructing the Capitol building and the new State Prison. The acts providing for the construction of these buildings were assailed as violating other provisions of the identical section of the Constitution containing this inhibition, but it was not even contended that they overstepped the bounds fixed by this restriction. Flecten v. Lamberton, 69 Minn. 187, 72 N. W. 65; Brown v. Ringdal, 109 Minn. 6, 122 N. W. 469.

Appellants also insist that the act violates the constitutional provision relating to special legislation. As said in Dahlsten v. Anderson, 99 Minn. 340, 109 N. W. 697, "the prohibitions of that section are specific, not general, and are limited by the courts to the subjects particularly enumerated." The State University is not enumerated in this section, and none of the express prohibitions therein can properly be construed as applying to it. Assuming but not conceding that the facts of this case bring it within the provision that no special law shall be enacted when a general law can be made applicable, the state, as said in Berman v. Minnesota State A. S. 93 Minn. 125, 100 N. W. 732, has the power and authority "to treat every subject of its sovereignty as within a class by itself—as the State University and the commissions for the erection and management of state buildings." Authority conferred upon a class is not within this constitutional inhibition even if the class contain but one member. State v. Cooley, 56 Minn. 540, 58 N. W. 150. It is clear that this constitutional restriction does not debar the state from providing such facilities as it may deem necessary or convenient for the proper performance of any of its governmental functions; and it is not important whether such conclusion be based upon the ground that a general law cannot be made applicable to such matters, or upon the ground that each enterprise carried on by the state in its governmental capacity constitutes a class by itself.

The courts cannot declare a law void, unless it clearly transgresses the constitutional limitations imposed upon the power of the legislature. We find no ground for holding that the act in question is unconstitutional, and as the trial court has found that the taking of the land in controversy is necessary for the purpose contemplated, and such finding is amply sustained by the evidence, the order appealed from is affirmed as to all the appellants.