## STATE BY CLIFFORD L. HILTON v. F. E. VOLL AND OTHERS.[1]

February 23, 1923.

No. 23,342.

**Condemnation for trunk highway is for a public use.**

1. Article 16 of the Constitution determines that the taking of the right of way necessary for the trunk highway system is for public use.

**Whether land is necessary is for the decision of the commissioner.**

2. The provisions of chapter 323, Laws 1921, indicate that the commissioner of highways and not the court is the agency to determine what land is necessary for the right of way for trunk highways.

**Amendment of 1921 does not apply to procedure.**

3. The said chapter does so specifically prescribe the procedure connected with the taking of such necessary right of way that the amendment of section 5395, G. S. 1913, by chapter 353, Laws 1921, has no application.

Proceedings instituted by the attorney general in the district court for Olmsted county for the condemnation of the necessary right of way for trunk highway purposes. The matter was heard by Callaghan, J., who made findings and denied the petition. From an order dismissing the petition for condemnation insofar as the same

[1]Reported in 192 N. W. 188.

related to the taking of lands described as tracts Nos. 1, 2, 3 and 4, petitioner appealed. Reversed.

*Clifford L. Hilton,* Attorney General, and *G. A. Youngquist,* Assistant Attorney General, for petitioner.

*Henry O. Christensen* and *Oscar C. Ronken,* for respondent.

HOLT, J.

The state by the attorney general petitioned the district court of Olmsted county to adjudge a strip of land, designated by an order of the commissioner of highways as a part of Trunk Highway No. 7, between Rochester and Kasson, taken for public use and reasonably necessary therefor, and that three disinterested persons be appointed to ascertain and assess the damages to the several owners for the taking thereof. When the petition came for hearing the respondents, the owners of the land appeared and answered, alleging that the lands designated were not required and that the taking thereof would not serve a public use. The hearing resulted in a denial of the petition. The state appeals.

The only question presented by the appeal is whether the court was authorized to determine the necessity of taking the particular land for public use, or whether the authority to select such land was vested in the commissioner of highways.

The constitutional amendment, article 16, created and established a trunk highway system wherein is included Trunk Highway No. 7, to run from Winona to South Dakota westerly of Lake Benton. This highway must afford Rochester and Kasson, among other cities named, reasonable means of communication. Hence, the taking of a strip of land for a roadway between Rochester and Kasson must be conceded to be a public necessity and for a public use. But highways cannot always be laid out in a straight line between designated places, and it remained a problem for the legislature to place the duty upon some agency to select the particular course and necessary land for the trunk highways. Subsequent to the adoption of article 16, chapter 323, p. 406, Laws 1921, was enacted. As indicated by its title, the legislature by this chapter aimed at a comprehensive effort to carry out the trunk highway system, and to co-

ordinate therewith all other highways and codify the law in relation to the establishment and maintenance of all roads in the state. A commissioner of highways is created, with competent assistants, to carry out the provisions of article 16 and "to acquire by purchase, gift, or condemnation as provided by statute all necessary right of way needed in laying out and constructing the Trunk Highway System, and to locate, construct, reconstruct, improve and maintain" the same (subdivision 1, § 13).

"Until such time as he may definitely locate and permanently construct the several routes of the trunk highway system, he shall select practicable roads along the general location of all other of the several routes enumerated in article 16 of the state Constitution, which he shall maintain for the benefit of the traveling public, which routes shall be known as temporary trunk highways" (subdivision 3, § 13).

"The commissioner of highways shall by order or orders designate such temporary trunk highway or highways, and when the final and definite location of any trunk highway or portion thereof has been by him determined he shall designate the same by order" (subdivision 4, § 13).

The only restraint placed on the commissioner in making a permanent location of a trunk highway is that the county board of any county interested may ask him for a hearing. The inference is that he alone is to determine the matter heard and select the particular land for the right of way. The law also provides that when a copy of the order of final location by the commissioner of highways is certified to the county auditor the county thereupon is relieved from all responsibility and duty in regard to the trunk highway so located. From these various provisions the conclusion is unavoidable that the legislature vested in the commissioner of highways the power and authority to designate the particular land needed for the right of way for a trunk highway. It is but reasonable to suppose that the legislature intended to give him the same authority to designate the land to be taken under the right of eminent domain as to purchase or accept by gift lands for right of way; otherwise there might be breaks in the route of a trunk highway. In chapter 323, p. 406,

Laws 1921, is also discerned an intention to delegate plenary and final power in the commissioner of highways in all that relates to the location, construction, and maintenance of the trunk highway system in order to obtain the best results. To achieve this a uniform and carefully worked out plan both for the route and the construction by one authority is needed.

The commissioner of highways is in all that relates to a trunk highway the agent of the state, and, in designating the lands for a right of way for such a highway, he but exercises the sovereign power of eminent domain inherent in the state. The state, by the order of its agent designating the particular part of respondents' lands for this trunk highway, appropriated the same for a public use and there only remains the question of fixing and paying a just compensation therefor. This may be done under the applicable provisions of chapter 41, G. S. 1913 (section 5395, G. S. 1913, et seq.) We think the action of the commissioner of highways in selecting land for the right of way for a trunk highway is of the same finality as that of the voters of a school district selecting a school site in School District No. 40 v. Bolstad, 121 Minn. 376, 141 N. W. 801, of the board of regents selecting a route for a street car line in State v. Van Reed, 125 Minn. 194, 145 N. W. 967, and of the municipal officers designating land for a library building in Hayford v. Bangor, 102 Me. 340, 66 Atl. 731, 11 L. R. A. (N. S.) 940.

In the Van Reed case it is stated : "Whether the use be public and whether proper compensation has been made are judicial questions, the final determination of which rests with the courts. All other questions involved in the taking of private property are of a legislative nature; and the determination of such questions by the legislature, or by an agency established by and acting under the authority of the legislature, is final and cannot be reviewed by the courts." Ample authorities in support of the propositions stated are given.

In the instant case, the Constitution, article 16, has answered the question that the taking is for a public use; it only remains for the court to determine the compensation; the agency established by the legislature to select the particular property needed for this public

use, the commissioner of highways, has so done in the way prescribed, namely, by an order which is not reviewable by the courts in this proceeding for the appointment of commissioners to award compensation. The petition asks for an adjudication that the land selected is taken for a public use and is necessary therefor, but this must be deemed surplusage and wholly unnecessary.

Respondents argue that the court and not the commissioner of highways is the final arbiter as to what land may be taken for a trunk highway, because chapter 323, p. 406, Laws 1921, does not "expressly provide for such taking and specifically prescribe the procedure connected therewith," and hence is excepted from the operation of the provision of chapter 41, G. S. 1913, by chapter 353, Laws 1921, amending section 5395, G. S. 1913. But it seems to us the amendment clearly indicates that as to the taking of land for roads the provisions of chapter 323, p. 406, Laws 1921, were deemed adequate and should govern. Not only the acquisition of the right of way for trunk highways, but for all other highways is therein provided for. The only instance in which the court and not the commissioner, is to determine whether a public use and public necessity are involved is when it is sought to drain lands for the improvement or benefit of a trunk highway (section 60, c. 323, p. 450, Laws 1921). The taking by the commissioner of a right of way under said chapter 323 is specifically prescribed and very simple, it is by making an order covering the land selected for the trunk highway involved.

Respondents cite numerous authorities where, either under authority conferred by statute or by reasonable implication, it has been held that the court was the agency to determine whether the taking was necessary for a public use. These are not controlling here, for we conclude that the legislature delegated the authority to the commissioner of highways as to the taking of a right of way for trunk highways. No power to a railway company desiring to cross the track of another company to designate the place of crossing by order, or otherwise, was given in the act construed in Re St. Paul & N. P. Ry. Co. 37 Minn. 164, 33 N. W. 701.

It may well be that, if the order of the commissioner of highways in locating the right of way was arbitrary and capricious, it could

be reached by an appropriate remedy in court, such as certiorari. But no question of that sort is here presented.

The order must be reversed.