STATE, BY HENRY N. BENSON, ATTORNEY GENERAL, v.
PALMER N. ERICKSON AND OTHERS.
MARGARET SQUIRES, INTERVENER.[1]

December 24, 1931.

No. 28,575.

*Henry N. Benson,* Attorney General, and *Harrison B. Sherwood,*
Assistant Attorney General, for the state.

*Pegelow & Bargen,* for respondent.

[1]Reported in 239 N. W. 908.

LORING, J.

This is an appeal by the state from a judgment in favor of the respondent Margaret Squires in a proceeding to condemn property for highway purposes. The state filed its petition in the district court of Beltrami county for the condemnation of a right of way for trunk highway No. 4 over certain lands in that county. The respondent had no interest in the land over which an easement was sought in the condemnation proceedings, but she claimed that certain lots belonging to her in the village of Blackduck were injuriously affected by the rerouting of the trunk highway, which involved a change of grade through that village, and she made application to the court to be made a party respondent in the condemnation proceedings and to have the damage to her village lots appraised therein. The court granted her application over objection. The commissioners awarded her no damages, but upon appeal she was awarded $2,000 for the change in grade in the street in front of her lots. Aside from a statement in the trial court's memorandum, the record is silent as to whether or not the village council consented to the change in grade as required by law. If the village approved the plan for change of grade, it would be liable under the rule laid down in Maguire v. Village of Crosby, 178 Minn. 144, 226 N. W. 398.

The sole question presented by this record is whether or not the district court, upon application of a landowner whose property is not described in the condemnation proceedings, may, over the objection of the condemnor, have the proceedings enlarged to include his property and have the damages thereto assessed in a proceeding which did not originally include his property.

The character of condemnation proceedings is best described in the language of Mr. Justice Mitchell in State ex rel. Simpson v. Rapp, 39 Minn. 65, 67, 38 N. W. 926, 928. This court, speaking through that distinguished jurist, said:

"Condemnatory proceedings in the exercise of the right of eminent domain are not civil actions or causes within the meaning of the constitution, but special proceedings, only *quasi* judicial in their

nature, whether conducted by judicial or non-judicial officers or tribunals. The propriety of the exercise of the right of eminent domain is a political or legislative, and not a judicial question. The manner of the exercise of this right is, except as to compensation, unrestricted by the constitution, and addresses itself to the legislature as a question of policy, propriety, or fitness, rather than of power. They are under no obligation to submit the question to a judicial tribunal, but may determine it themselves, or delegate it to a municipal corporation, to a commission, or to any other body or tribunal they see fit. Neither are they bound to submit the question of compensation incident to the exercise of the right of eminent domain to a judicial tribunal. Provided it be an impartial tribunal, and the property-owner has an opportunity to be heard before it, the legislature may refer the matter for determination to a jury, a court, a commission, or any other body it may designate."

In that case it was held that the prohibition contained in art. 6, § 8, of the state constitution, against a justice of the peace taking jurisdiction of any civil cause involving title to real estate, did not apply to a condemnation proceeding for the establishment of a road, because the proceeding was not a civil action or cause and the justice did not act strictly judicially, but was a mere agency through which the legislature effectuated the condemnation proceedings.

G. S. 1923, c. 41, as amended, 2 Mason, 1927, id. provides for procedure in condemnation proceedings. Section 6557-1 modifies the ordinary procedure in cases brought by the state.

Art. 16 of the constitution, which establishes a trunk highway system, describes the general routing of such highways but leaves the specific and definite location to be fixed and determined by such boards, officers, or tribunals, and in such manner as shall be prescribed by law. G. S. 1923, § 2554, as amended, 1 Mason, 1927, id. vests in the commissioner of highways the power to select the temporary and permanent location of the trunk highways. Subd. 3 of § 2554 prohibits the construction, reconstruction, or improvement of any part of the highway system lying within the corporate

limits of any borough, village, or city, including the change of grade of such highway within such corporate limits, without the consent of the governing body of the municipality.

In the case of State v. Voll, 155 Minn. 72, 192 N. W. 188, 189, this court used some language which if taken away from the context and viewed without reference to the question which was then before the court would indicate that the court viewed the order designating the route of the trunk highway as a taking of the land over which the highway was routed. In that case an order establishing the trunk highway had been made, and the condemnation proceedings commenced under its authority were contested by the respondent on the ground that the lands designated were not required and would not serve a public use. This court held in effect that the making of the order by the highway commissioner under the authority of the legislature and the constitution was final and conclusive on the question of the necessity of the taking. The opinion stated [155 Minn. 75]:

"We think the action of the commissioner of highways in selecting land for the right of way for a trunk highway is of the same finality as that of the voters of a school district selecting a school site in School District No. 40 v. Bolstad, 121 Minn. 376, 141 N. W. 801, of the board of regents selecting a route for a street car line in State v. Van Reed, 125 Minn. 194, 145 N. W. 967, and of the municipal officers designating land for a library building in Hayford v. Bangor, 102 Me. 340, 66 A. 731, 11 L.R.A.(N.S.) 940."

A careful reading of these three cases discloses the fact that in no one of them was the action of the voters or that of the board referred to considered to be a taking of the property later sought to be condemned, but was merely considered as an exercise of the legislative function of determining the necessity of taking the property for public use, and consequently became conclusive on that question in the condemnation proceedings which followed. The paragraph quoted from the Voll case, 155 Minn. 72, 192 N. W. 188, therefore definitely discloses what this court had in mind with reference to the effect of the highway commissioner's order. The

commissioner's order rerouting a trunk highway is merely the preliminary step which establishes public authority and determines the necessity of the acquisition by condemnation or otherwise. It forms no more a part of the condemnation proceedings than it would if a definite final designation of location had been written into the constitution. It justifies condemnation proceedings in case the easements designated are not acquired by purchase, but it did not authorize or justify an enlargement by the court of the subsequent proceedings to include the respondent's lots. For that authority, if it exists at all, we must look elsewhere. As we have seen, the proceedings for condemnation are primarily legislative in character; the legislature might have employed some impartial agency other than the court to determine the question of compensation. By G. S. 1923, c. 41, as amended, 2 Mason, 1927, id. it employed the court to conduct the proceedings initiated by the jurisdictional petition. Such proceedings are in rem. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3079, and cases cited in note 49. Chapter 41 makes no specific provision for their enlargement by the inclusion, against the objection of the condemnor, of lands not described.

After an appeal has been taken from the award of commissioners, it provides for the joinder of other parties interested in the issues involved, and, upon the appeal, provides that the trial be conducted and the cause disposed of according to the rules applicable to ordinary civil actions. It will be observed that the general powers conferred upon the court relate to matters arising upon the appeal and to functions which are at least quasi judicial in character, whereas no such powers are expressly granted as to those functions which are essentially political or legislative, such as the determination of what land or easements shall be taken. Has the court inherent power to extend the proceedings so as to include land or easements not sought to be taken by the condemnor? Without going extensively into the inherent powers of courts, we may readily conclude that a court may not interfere with the exercise of the political, legislative, or administrative functions which by specific authority of the constitution the legislature has conferred upon the

highway commissioner. What property shall be taken for public use rests wholly within the legislative discretion subject only to the restraint that just compensation shall be paid. Shoemaker v. U. S. 147 U. S. 282, 298, 13 S. Ct. 361, 37 L. ed. 170, 184; U. S. v. Gettysburg E. R. Co. 160 U. S. 668, 16 S. Ct. 427, 40 L. ed. 576. In the latter case it was contended that more land should be taken than was described in the petition. The court held that that was not a judicial question. The courts have no power to reëxamine the question of necessity or exigency or the extent to which land may be taken for a public use. Hayford v. City of Bangor, 102 Me. 340, 66 A. 731, 11 L.R.A.(N.S.) 940; State v. Voll, 155 Minn. 72, 192 N. W. 188.

If the highway commissioner's determination is conclusive on the necessity of taking, his determination is likewise conclusive on what property he will not take or damage and on what property he will not cause to be included in the condemnation; and the court may not enter his province for the purpose of compelling him to include in condemnation proceedings lands or interests which he has determined not to condemn. It must leave property owners to their legal or equitable remedies to protect invaded rights.

In the case at bar he has not taken the respondent's property, but it has been damaged by a change of grade of the street within the village. This change of grade, it is true, was provided for in the highway commissioner's order or plans for the rerouting of the trunk highway; but the record is silent as to what arrangement the highway commissioner may have had with the village as to the damages thereby caused. The only light which we have upon the situation is contained in the memorandum of the trial court, where it is stated that the change of grade was made with the consent of the village council, which under the law makes the village liable for the damage. If it be true that the village consented to the change of grade, it did so with presumed knowledge of the liability that it thereby assumed and with the full knowledge that it had no relief other than legislative for the burden so assumed. We do not pass upon the validity of any arrangement which it might make with the highway commissioner because that question is not before

us and the record is silent as to whether or not there was any arrangement.

If we are to justify the trial court's order enlarging the petition to include respondent's property, we are in effect allowing the court to interfere with the functions of the legislative branch of the state government, which by the constitution and by law are vested in the highway commissioner. We therefore hold that it was error to order the inclusion of respondent's property in the proceedings.

The case of In re St..P. & N. P. Ry. Co. 34 Minn. 227, 25 N. W. 345, 346, involved an attempt by the railway company to appropriate certain lands belonging to the University of Minnesota situated on the line of the railway's proposed route. The regents sought to show that if the road were constructed on the line proposed it would injuriously affect property of the university required for public use though not sought to be appropriated in the condemnation proceedings. The court said [34 Minn. 231]:

"The mere fact that the lot in Regents' addition belonged to the university gave the state or regents no standing in court to raise such question. For the purposes of the petition, lands not embraced therein, or connected with other lands sought to be condemned as part of one entire tract, are not to be deemed affected by the proceedings, so as to authorize the owners thereof to appear and object to the propriety of granting the petition. * * * A cannot object that B's lands are taken, nor raise an issue as to other separate and independent lots or parcels of land belonging to him, not described in the petition nor included in the proposed improvement, since his rights and interests in such lands are not affected by the condemnation proceedings."

The respondent is however not without a remedy against the village, if, as stated in the trial court's memorandum, it consented to the change of grade. Maguire v. Village of Crosby, 178 Minn. 144, 226 N. W. 398. She might have enjoined the work of changing the grade had she acted seasonably. If, as she intimates, the village council did not consent, the order was illegal and unauthorized

in so far as change of grade was concerned, and respondent's theory of a taking by virtue of the order falls.

The judgment is reversed.

OLSEN, J. (dissenting).

I am unable to concur in the holding that there was in this case any interference with any legislative functions of the state by the intervention by respondent in the so-called condemnation proceeding here in question.

The necessity for and the definite location of state highways, including the determination of the width thereof and the land to be taken therefor, are legislative questions. The determination of the amount of damages for the taking or injury to lands caused by the establishment of such highways is not a legislative question. Art. 1, § 13, of the state constitution, provides that private property shall not be taken, destroyed, or damaged for public use without just compensation therefor first paid or secured. It follows that neither the legislature nor any branch of the government under legislative authority can arbitrarily take or damage private property for public use without compensation nor arbitrarily fix compensation or deny compensation.

The constitution does not expressly provide how compensation shall be determined. The legislature therefore may and has provided the manner in which compensation shall be determined by providing that the commissioner of highways, where he cannot acquire the right to construct the road by gift or purchase, shall proceed by condemnation under the eminent domain statute. But, while this process is generally referred to as a condemnation proceeding, it is in fact only a judicial or quasi judicial proceeding to fix the compensation or damages to be awarded to the landowner. The necessity for the taking and the amount of land to be taken or damaged—all these matters—have already been conclusively and finally determined by the acts of the commissioner, as legislative matters, in fixing the route and width of the road and the plan of construction thereof. The question whether the taking is for public use, while ordinarily a judicial question, can hardly arise in

this kind of a case. So when application is made to the court for the so-called condemnation, all that is to be determined is the amount of compensation or damages to be awarded to the land-owners. And all that is done is to appoint appraisers to assess the damages, subject to approval by the court and subject to the right of any landowner and of the state to appeal to the court from any award and have a jury trial. While the legislature may confer upon boards, commissioners, or appraisers in the first instance the power to assess the damages, that is not a legislative function. It is partly administrative and partly judicial, but neither in whole nor in part legislative. It is quasi judicial because not exercised in the first instance by courts but by administrative agents. What is proper compensation and whether proper compensation has been made are judicial or quasi judicial questions, and must be determined by a fair and impartial tribunal, either a court or other body, such as boards, commissioners, or appraisers, acting as judges thereof, and after due notice and opportunity to be heard. True, the legislature may make the determination of such court or board final, that is, it may provide no appeal therefrom; but even in that case the higher court will review the determination on certiorari. Langford v. Bd. of Co. Commrs. of Ramsey Co. 16 Minn. 333 (375); State ex rel. Simpson v. Rapp, 39 Minn. 65, 38 N. W. 926; Fairchild v. City of St. Paul, 46 Minn. 540, 49 N. W. 325; Knoblauch v. City of Minneapolis, 56 Minn. 321, 57 N. W. 928; Stewart v. G. N. Ry. Co. 65 Minn. 515, 68 N. W. 208, 33 L. R. A. 427; M. & St. L. R. Co. v. Village of Hartland, 85 Minn. 76, 88 N. W. 423; State ex rel. Ryan v. District Court, 87 Minn. 146, 91 N. W. 300; State ex rel. Utick v. Bd. of Co. Commrs. 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161; Burns v. Essling, 156 Minn. 171, 194 N. W. 404.

Whether the use is public and whether proper compensation has been made are judicial questions, the final determination of which rests with the courts. All other questions involved are legislative. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3027; State ex rel. Smith v. Van Reed, 125 Minn. 194, 145 N. W. 967; Webb v. Lucas, 125

Minn. 403, 147 N. W. 273; State v. Voll, 155 Minn. 72, 192 N. W. 188.

The case of State v. Voll, 155 Minn. 72, 192 N. W. 188, is sought to be distinguished. It may be distinguishable on the facts, but the law therein stated, even if held obiter, is correct. The determination by the commissioner, by final order, of the location of the highway, the necessity and propriety of the taking and the amount of land to be taken therefor, and the determination of the kind of grade and road to be constructed, were final. State ex rel. McFarland v. Erskine, 165 Minn. 303, 206 N. W. 447; G. S. 1923, § 2554, as amended, 1 Mason, 1927, id. It appears to be conceded in our present case that the road has been built, and the grade of which complaint is made has already been constructed. While the grade is in the street, the respondent was the owner of the fee to the center thereof, subject to the easement for travel.

Perhaps as good a test as any that can be applied in this case is that, if the intervention sought any relief against the exercise by the state or the commissioner of any legislative power, the intervener could not prevail and the court could grant no relief against the exercise of such power. But on the question of damages, the inherent and constitutional power of the district court is ample to grant relief. If the matter of allowing damages in a condemnation proceeding is a legislative function, then the courts have no power to entertain any action or proceeding to determine damages, for the courts cannot invade the legislative branch of the government or perform any legislative function. If this matter of fixing damages is a legislative function, then all our cases where the courts have undertaken to determine damages in this kind of cases are wrong, and the courts have no power, either originally or on appeal, to pass upon the question in a road condemnation case. The legislature has no power to confer on the courts legislative functions.

The only question presented seems to be whether the respondent Margaret Squires, the owner of the lots fronting on the street, had sufficient interest in the matter to permit her to intervene. That question is not expressly considered in the opinion and need not be

here discussed, except to say that intervention is to a great extent discretionary with the trial court, and abuse of discretion in that respect is not clearly shown.

When the commissioner of highways, in the name of the state, goes into district court to condemn land, he submits himself to the jurisdiction of the court and stands on the same footing as any individual so doing.

HOLT and STONE, JJ. (dissenting).
We concur in the dissent.