STATE, BY HENRY N. BENSON, ATTORNEY GENERAL, v.
EMMA E. STANLEY AND OTHERS.
MATTHEW KEELEY, APPELLANT.[1]

March 10, 1933.

No. 29,119.

[1]Reported in 247 N. W. 509.

*Gallagher, Madden & Gallagher* and *Moonan & Moonan,* for appellant.

*Henry N. Benson,* Attorney General, and *Victor J. Michaelson,* Assistant Attorney General, for respondent.

DIBELL, JUSTICE.

The defendant Matthew Keeley appeals from an order of the district court of Waseca county made March 14, 1932, denying his motion that the state include 40 acres, owned by him, in a pending condemnation proceeding for the acquisition of a right of way for a portion of trunk highway No. 7 in Waseca county, to the end that damages therefor be assessed. Upon the hearing an order dated January 5, 1932, was made requiring the inclusion of the 40. Afterwards the court of its own motion, by an order dated March 14, 1932, the one now on appeal, vacated the order of January 5, 1932, and denied defendant's motion. This it did in view of State, by Benson, v. Erickson, 185 Minn. 60, 239 N. W. 908, decided December 24, 1931, which had not come to its attention at the time of the January order.

As far as concerns the defendant's motion now before us the facts are not in controversy. They are to be taken as recited in the record. Whether upon a hearing they may be found otherwise is not important. A brief statement of them, with a like statement of the applicable law, and our conclusion as to the result which should follow, will be enough.

The constitution, art. 16, approved at the November, 1920, election, creates and establishes a trunk highway system to be located, constructed, reconstructed, improved, and forever maintained by the state. By L. 1921, p. 406, c. 323, now embodied in G. S. 1923

(1 Mason, 1927 & 1931 Supp.) § 2542, et seq., there was enacted the general highway act, which provided for the construction and maintenance of highways. It was enacted because of the adoption of art. 16 of the constitution. It created the office of commissioner of highways (§ 2553) and authorized him to acquire by purchase, gift, or condemnation, as provided by statute, all necessary rights of way and to locate and maintain the highway system (§ 2554). It was contemplated that the general statutes relative to condemnation should be the basis of procedure when land was condemned. G. S. 1923 (2 Mason, 1927) c. 41, § 6537, et seq.

The commissioner of highways located a portion of trunk highway No. 7 in Waseca county west of the city of Waseca. The right of way was acquired by condemnation. The defendant Matthew Keeley, who appeals, was the owner of certain tracts of land included in the condemnation proceeding. As to them there is no complaint. He was the owner of a 40-acre tract which was not included in the condemnation. It was not contiguous to his other lands, but had been used in connection with them for 30 years or more; nor did it adjoin the highway. It was contiguous to lands condemned for highway purposes in the pending proceeding.

In constructing the highway and as part of the engineering plan, the commissioner diverted waters from their natural courses and watersheds and cast them upon this 40 to its damage. The use will be permanent. The defendant's claim is that he should have compensation for the damages done to this 40, and, since he cannot sue the state, that the 40 should be brought into the condemnation proceeding for the assessment of damages by the commissioners. That the 40 was taken or used and is damaged is not in question on this motion.

It is not to be supposed that it was intended by art. 16 of the constitution nor by the highway act of 1921 that property could be taken or damaged for a right of way without compensation to the owner.

Art. 1, § 7, of the constitution provides in part that no person shall "be deprived of life, liberty or property without due process of law."

Art. 1, § 8, provides:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely and without purchase; completely and without denial; promptly and without delay, conformably to the laws."

Art. 1, § 13, provides:

"Private property shall not be taken, destroyed or damaged for public use, without just compensation therefor first paid or secured."

The state cannot be sued without its consent. This is so not because of a constitutional or statutory protection given the state, but because of public policy. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8831; 59 C. J. p. 300, § 459, et seq. And, since it cannot be sued, the state claims that a property owner who is damaged or whose land is taken, as here, but who is not included in the condemnation proceeding, cannot have himself or land made a party so that an award may be made for the damaging or taking; for this, so the argument runs, would amount to a suit against the state; and in addition there is the contention that it would allow the courts to determine matters of condemnation which are essentially legislative. State ex rel. Smith v. Van Reed, 125 Minn. 194, 145 N. W. 967; State, by Hilton, v. Voll, 155 Minn. 72, 192 N. W. 188; State, by Benson, v. Erickson, 185 Minn. 60, 239 N. W. 908; 2 Dunnell, Minn. Dig. (2 ed.) § 3014, and cases cited. The defendant does not claim that in general the exercise of the right of eminent domain is not legislative. Whether the contemplated use is public and what damages will compensate are judicial or quasi judicial. State ex rel. Utick v. Bd. of Co. Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161; Burns v. Essling, 156 Minn. 171, 194 N. W. 404; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3027, and cases cited.

The showing at the present time is that the state planned and constructed a trunk highway west from Waseca 15 miles and in-

cluded in the condemnation proceeding lands which it thought necessary, and is making use of defendant's 40, for which it made no compensation. It was proper to include this 40 and to award damages. The state invoked the jurisdiction of the district court to acquire the right of way for the general road project. If the condemnor had been a railroad or a municipality the defendant would have had a remedy by suit for damages or by injunction. Here he has no remedy by suit for damages. Whether he might have enjoined the use of this 40 by a proceeding against the highway commissioner we do not consider. Since the state has chosen to invoke the jurisdiction of the court in the establishment of a comprehensive trunk highway and has chosen to use and damage the defendant's 40 without condemning it, we hold that the landowner may intervene by motion in the condemnation proceeding and that the court may say to the state that it must bring the land of the defendant, concededly taken and damaged, into the proceeding for the assessment of compensation. And this seems almost a necessary result of the constitutional provisions mentioned. The state cannot, with decent regard for the due process of law provision, and the provision giving everybody a remedy for wrong done his property, and the special provision against the taking of property for public use without compensation, leave out property which it uses or damages in a public project and prevent the owner from having compensation, all because it cannot be sued. If in going west from Waseca the state had left a mile gap in the highway uncondemned but used and then resisted the powers of the court to decree compensation to its owner, its position would be more startling but little different.

The state urges that the defendant has a sufficient remedy by petitioning the legislature for an appropriation of the amount which it would have had upon a judicial determination in the condemnation proceeding, that is, the amount of his damages. The right to petition the legislature for relief when there is no legally enforceable right is recognized. The legislature may give it or deny it. There is no method of judicial review. The constitution

intends that when a man is deprived of his property he shall have a judicial determination of the amount of damages, a hearing where he may of right offer evidence, and as a result of which he may have enforceable damages. It need not be a judicial determination by judge and jury; but in some sensible way it must be a judicial determination of damages sustained.

The case upon which the state relies is State, by Benson, v. Erickson, 185 Minn. 60, 239 N. W. 908. This is the case, as noted before, which led the trial court to the view that its order of January 5, 1932, was wrong, and induced the order from which the appeal is taken. It was justified in doing as it did. Distinctions may be drawn between this and the Erickson case. But upon the basic principle upon which we rest the right of the defendant to get his land into the condemnation proceeding, the two cases are inconsistent. So far as the Erickson case conflicts with this it is overruled.

Order reversed.

LORING, JUSTICE (dissenting).

I am heartily in accord with the view that the defendant should have compensation for the damage done and to be done him, but it should be given him in the orderly functioning of our form of government, the branches of which are constitutionally distinct. If I were a member of the legislative branch of the government considering the advisability of establishing a court of claims with tort jurisdiction or of conferring such jurisdiction upon existing tribunals as against the state, the reasons advanced by the majority would be persuasive. Functions now performed by the state seem to demand legislation of that character. But if this government is to continue to run smoothly it must keep its branches within their proper sphere. Perhaps no case can better illustrate that necessity than the one at bar. The majority seeks to enter the legislative field and to discharge legislative functions. It concedes, I take it, that the extent to which the state shall acquire property is distinctly a legislative function. Concededly also the ultimate determination of the amount of damage due to such acquisition is a judicial or

at least a quasi judicial function. Here we have the court assuming to say that the state must acquire a permanent easement to flood defendant's property. The state may determine through the officers to whom is delegated that authority that it will correct the condition which now harms the defendant. The court should not step in and usurp that authority by saying to such officers that a permanent easement must be acquired. That can only be determined by the nonjudicial branch, leaving to the courts the question of whether the taking is for a public purpose and also the final determination of adequate compensation. The extent of the taking is not a judicial but a legislative question, and the courts cannot interfere. We so held in the recent case of State, by Benson, v. Erickson, 185 Minn. 60, 65, 239 N. W. 908; following Shoemaker v. U. S. 147 U. S. 282, 298, 13 S. Ct. 361, 37 L. ed. 170; U. S. v. Gettysburg E. Ry. Co. 160 U. S. 668, 16 S. Ct. 427, 40 L. ed. 576; Hayford v. City of Bangor, 102 Me. 340, 66 A. 731, 11 L.R.A.(N.S.) 940; and State, by Hilton, v. Voll, 155 Minn. 72, 192 N. W. 188. Here the majority is assuming, by enlarging the proceedings, to determine the extent of the taking, just what every court in the land that has passed on the question says a court may not do. The trial court specifically found in the case at bar that there were a variety of other ways in which the water could be disposed of, and the commissioner may yet determine to select one of them. There is nothing in the record to indicate that he will not perform his duty. There is no justification for the view that the present arrangement is irrevocably permanent. Past damages may not be considered in the proceedings. Property is taken as of the date of filing the award. City of Minneapolis v. Wilkin, 30 Minn. 145, 15 N. W. 668.

There seems to be a tendency on the part of the majority to treat the commissioner's order fixing the route of a trunk highway as a definite taking and condemnation of the right of way and all property affected by its subsequent improvement, leaving only the question of damages to be determined. This question was discussed and disposed of adversely to such view in State, by Benson, v. Erickson, 185 Minn. 60, 239 N. W. 908, now sought to be overruled. The

present case well illustrates the fallacy of that view. Did the commissioner's order effect a taking of the flowage rights over defendant's land, which is not even contigous to the right of way? Of course not, for the order in no way created the condition. The plans and specifications designing the grade and ditches and the construction thereof in interference with the natural flow of water effected the harmful result. Presumably grades, ditches, culverts, and bridges can be so designed as to permit water to flow in its natural channel. It is the duty of the highway department either to so design its construction or to condemn the right to damage. We cannot, or at least should not, assume to make its decision. If it fails to do its duty, the legislature, under the constitution, is bound to see that resulting injury is paid for. Past damages should also be provided for. If the court can enlarge or open up condemnation proceedings so as to compel the state to acquire property it has not sought to acquire, the next step will be for the courts to initiate condemnation proceedings to compel such action. Take, for instance, the supposed case set out in the majority opinion and assume that instead of acquiring parts of the right of way by condemnation proceedings the state had acquired all but one tract by purchase, or assume that in the case at bar all of the right of way had been amicably acquired by purchase. Would this court then allow the initiation of new condemnation proceedings without the jurisdictional petition to compel the state to acquire a right of way or the right permanently to flood the defendant's land? It would be just as logical to do so as to do what the majority now proposes to do.

It is significant that no precedents are found within the 48 states of the union for the initiation of condemnation proceedings by a court or for the enlargement of the same when not specifically authorized by the legislative branch.

I think the trial court should be affirmed.