STATE, BY G. A. YOUNGQUIST, ATTORNEY GENERAL, v.
ALICE E. HALL AND OTHERS.
SAME v. LOUIS L. INGRAM AND OTHERS.
H. L. KOPP, INTERVENER.[1]

July 5, 1935.

No. 30,217.

[1]Reported in 261 N. W. 874.

*Harry H. Peterson,* Attorney General, *Ordner T. Bundlie,* Assistant Attorney General, and *John E. Katzmarek,* Special Assistant Attorney General, for the State.

*Brown, Somsen & Sawyer,* for intervener.

JULIUS J. OLSON, JUSTICE.

On August 22, 1928, the state by its attorney general filed a petition in the district court of Winona county for condemnation of certain lands for right of way of state highway No. 3 in that county. As a part of the highway construction a concrete bridge was built across an old county ditch some 1,275 feet downstream from the land owned by one H. L. Kopp (who will hereafter be referred to as intervener). The bridge was completed on November 12, 1928. The highway condemnation proceedings were duly closed on August 25, 1931, at which time the final certificate provided by 2 Mason Minn. St. 1927, § 6557-1(d), was made and filed. On September 9, 1933, intervener caused a notice of motion to issue, supported by affidavits, wherein he sought to intervene in the condemnation proceedings and to have his land included therein, it being his claim "that the establishment of said highway has resulted in the taking of a large portion of said real estate and serious damage to the remainder thereof; that confiscation will result unless redress can be obtained"; that intervener has no adequate remedy other than by inclusion of his real estate in the proceedings, to the end that damages to his land might be assessed; "that no part of said real estate has yet been included in said proceedings and no notice in said proceeding was served upon" him. Upon the hearing of the order to show cause the state appeared specially and objected to the jurisdiction of the court, claiming that the condemnation proceedings having been concluded more than two years prior to the time of intervener's application the matter was closed and that the court had no jurisdiction to include his property. The court overruled the objections and granted intervener's motion on November 1, 1933.

In that order the court defined the easement of the state in this form:

"Parcel 47. An easement for the inundation of the following described tract or parcel of land, and the deposit thereon of silt, driftwood and debris, in times of freshets or floods,. to-wit: [Here follows description of intervener's property].

"Names of persons interested in said Parcel 47 and nature of interest:

| NAME | NATURE OF INTEREST. |
|---|---|
| H. L. Kopp (a single man), | Sole owner. |
| The Merchants Bank of Winona, | Mortgagee. |

"And it is further ordered that the title of said proceeding is hereby amended by adding the name of H. L. Kopp as a party respondent."

Commissioners were appointed, and they promptly qualified. They made and filed their report January 8, 1934, and awarded intervener $2,750 as damages. The state perfected an appeal from that award, and the matter came on for trial before the court and a jury on January 29, 1934. The state again renewed its objections and moved that the proceedings be dismissed, setting forth as grounds therefor that the court was without jurisdiction to include intervener's property; that the proceedings in condemnation had been legally closed and adjudicated upon the filing of the final certificate hereinbefore referred to; that the proceedings sought by intervener amounted to collateral attack upon a final judgment. The objections of the state were overruled, and the cause proceeded to trial, resulting in a verdict in intervener's behalf in the amount of $3,000. In submitting the case to the jury the court said, and this is the theory upon which recovery is based:

"The highway itself is not upon the respondent's land, but the maintenance of the highway interferes with the use of the land by reason of the fact that a bridge, which is a part of the highway, has been constructed and is being maintained in such a manner that it occasionally obstructs the flow of a watercourse across said land by becoming clogged with driftwood and debris, and thus

causing the creek to overflow its banks and inundate or flood the land.

"The state, in this proceeding, has acquired the right to obstruct the water course and flood the land in this manner. Such a right is called an easement. The Court, in preliminary proceedings, has defined the easement to be acquired in the following terms: An easement for the inundation of the land, and the deposit thereon of silt, driftwood, and debris in times of freshets or floods.

"The question for you to determine is what effect, in dollars and cents, has this easement upon the market value of the land? * * *

"The respondent, in this proceeding, is not seeking to recover damages for the loss of his crops. It is not a question of what the water has done in the past. The question, stated in practical terms, is how has the situation, created by the construction and maintenance of this highway bridge, affected the market value of the land."

Later the state moved for judgment notwithstanding the verdict and, if that were denied, for new trial, setting forth various grounds upon which the blended motion was based. That motion was denied in its entirety. Upon intervener's application, the court made an order on April 4, 1934, directing that the clerk in entering judgment upon the verdict include interest upon the amount of the award from November 27, 1928, that being the date of the taking by the state of its easement for inundation upon intervener's land, the court assuming that there was in fact a taking thereof by the state. On May 31, 1934, judgment was entered for intervener and against the state in the amount of the verdict, $3,000, interest $992, and costs $45.15, in all $4,037.15. Appeal from that judgment brings the cause here for review.

Many assignments of error are involved and argued in briefs of counsel. In the view we take of this case it is necessary to consider only the following: (1) Did the court have jurisdiction, in view of the facts hereinbefore stated, to permit intervener to come into the case, i. e., to intervene? (2) If the court was authorized so to do, does the evidence warrant the conclusion that there was

a taking of the property of intervener, or was the state's act a mere trespass?

1. The right to intervene is covered by 2 Mason Minn. St. 1927, § 9263. It will be observed that one seeking to intervene must have "an interest in the matter in litigation between others that he may either gain or lose by the direct legal effect of the judgment therein * * * in the pending action"; he must make a showing by complaint "before the trial begins, alleging the facts which show such interest, and demanding appropriate relief against either or both of the parties." 3 Dunnell, Minn. Dig. (2 ed.) § 4897a, defines intervention as "an act by which one voluntarily becomes a party to an action *pending between others.*" (See Faricy v. St. Paul I. & S. Society, 110 Minn. 311, 125 N. W. 676.) So the question at once arises whether the facts in the instant case permit the view that there was an action pending at the time intervener sought and obtained below the right of intervention. The condemnation proceedings in the instant case were taken pursuant to the provisions of 2 Mason Minn. St. 1927, § 6557-1, and subsequent sections. Subdivision (d) provides that G. S. 1923, § 6545, "shall be dispensed with," likewise "the final decree provided for in § 6553, * * * provided the attorney for the petitioner make a certificate describing the land taken and the purpose or purposes for which taken, and reciting the fact of payment of all awards or judgments in relation thereto, which certificate upon approval thereof by the court shall establish the rights of the petitioner in the lands taken and shall be filed with the clerk and a certified copy thereof filed for record with the register of deeds. Such record shall be notice to all parties of the title of the state or of its agency or political subdivision to the lands therein described." Obviously, the statute has finality for its object and purpose. That was the purpose of § 6553. Dispensing with the final decree therein mentioned does not change the statutory purpose and effect of the final certificate which is intended to and does take its place.

That intervener knew of the condemnation proceedings during the pendency thereof is not disputed. In his affidavit in support of his motion to intervene he stated that he knew of these shortly

after the same were begun. He observed the grading of the highway and the building of the bridge, but claims he did not know "that its design was such as to obstruct the waters of said ditch and creek until August 16, 1932, when my land was flooded due to that obstruction." He had his chance to have his day in court but did not seize the opportunity. Condemnation proceedings being *in rem*, lack of notice, in the personal sense, is immaterial. The case relied upon, State, by Benson, v. Stanley, 188 Minn. 390, 247 N. W. 509, 510, does not aid him. There the owner was a party to the proceeding. The 40-acre tract was a part of his land. In the proceedings certain parcels belonging to him were included, but the particular 40 as to which damages were sought by the owner was omitted. This court by reason of this situation permitted intervention. The court said (188 Minn. 392):

"In constructing the highway and as part of the engineering plan, the commissioner diverted waters from their natural courses and watersheds and cast them upon this 40 to its damage. *The use will be permanent.* The defendant's claim is that he should have compensation for the damages done to this 40, and, since he cannot sue the state, that the 40 should be brought into the condemnation proceeding for the assessment of damages by the commissioners. *That the 40 was taken or used and is damaged is not in question on this motion.*" (Italics ours.)

We cannot inflate that rule so as to permit an intervention after the proceeding has come to an end. Nothing remains in which to intervene. If we were to sustain the result below it would practically mean that our highway condemnation cases are subject to reopening at any time. Only the doctrine of laches could apply. There is no statute of limitations covering the matter, and we lack the power to make one. As to "time to intervene," see 20 R. C. L. p. 688, § 27.

2. Further discussion is perhaps unnecessary in view of what has been said. But it may not be amiss to suggest that the two acts of trespass, and we think that is the most that can be said of the state's acts, cannot be made the means of or basis for saddling

the state with an easement for all time to come against its wishes and contrary to its purposes or requirements. That intervener is virtually a plaintiff in a negligence action clearly appears. In the statement of facts in his brief he has this to say:

"The nub of the case is that the dump which carries the State's highway was thrown across a waterway and constitutes a dam except as it is relieved by a bridge; this bridge is constructed like boxes with the ends out, laid side by side, so that in times of high water when a clear opening is needed most, the vertical partitions, which form the sides of the sluiceway boxes, halt and collect debris in the stream and plug shut so that the bridge and dump make a complete dam which floods and ruins Kopp's market garden, situate a short distance above the bridge, and result in practical confiscation."

Between the location of the bridge complained of here and intervener's land is another bridge different in construction and as to which no complaint is made. The most that can be said against the state's bridge is that it is a negligent piece of construction; that by reason of "vertical partitions" which "halt and collect debris in the stream" the bridge is converted into "a complete dam which floods and ruins" intervener's market garden during seasons of high water. Obviously the matter is not beyond remedy. The state should not be compelled to buy what is neither needed nor wanted. In the aggregate of all such easements the cost may be many times the expense of remedying the defect. Under these circumstances, the rule stated in Jungblum v. M. N. U. & S. W. R. Co. 70 Minn. 153, 72 N. W. 971 (third syllabus paragraph) seems appropriate:

"The plaintiff's land was and is flooded by the negligent construction of the defendant's roadbed across a natural channel for surface water, without a culvert therein to let such water pass off in its accustomed course. *Held*, that the injury is not permanent in its nature, and the measure of damages is the diminution in the rental value of this land by reason of the injury, computed to the commencement of the action."

And further (70 Minn. 159) :

"It is true, as suggested by the trial court in justification of the instructions and here urged by counsel for the plaintiff, that the plaintiff, by his complaint, recognizes the right of the defendant to continue to flood his land, and alleges that it will always continue to be injured by such flooding, and seeks to recover his entire damages for all time in this one action. It is also true that the defendant has neither alleged nor proved any intention of constructing a culvert in the embankment. But calling the injury permanent does not make it so. The facts of this case must determine the character of the injury and the measure of damages, not names or claims. The facts as established by the evidence and verdict, under the instructions of the court, are that the defendant might have constructed a culvert in its roadbed, and thereby have carried off the surface water through its natural channel, without injury to any landowner, but that it negligently constructed its roadbed without any culvert, and thereby unnecessarily and unreasonably flooded the plaintiff's land, and that, if a culvert was now put in, the water would not flow upon the plaintiff's land."

Judgment reversed.

DEVANEY, CHIEF JUSTICE (dissenting).

I cannot accede to the majority view. Kopp's property has been taken by the state, and he has received no compensation therefor. He has lost two years' crops, and the market value of his land has been materially decreased. The majority opinion summarily denies Kopp any compensation for this taking and, by relegating him to the legislature, in effect denies him any relief. Sending Kopp to the legislature is a sterile, fruitless procedure. In view of this fact and in view of the fact that Kopp will get no relief unless we give it to him, I believe we should not adhere to technicalities. We should hold that Kopp's time to intervene has not lapsed. The majority opinion overlooks substantial justice and adheres to technical nicety. I believe that the certificate here filed pursuant to 2 Mason Minn. St. 1927, § 6557-1, did not end the proceeding so as to prevent Kopp from intervening at this time. The proceeding is

entirely statutory, and I believe we should interpret it liberally so as to accomplish substantial justice.

In my opinion the court correctly held that the state acquired an easement to flood Kopp's land. Art. 1, § 7, Minn. Const. provides in part that no person shall "be deprived of life, liberty or property without due process of law." Art. 1, § 13, provides: "Private property shall not be taken, destroyed or damaged for public use, without just compensation therefor first paid or secured." The court did not err in concluding that the state had acquired an easement on Kopp's land. It conclusively appears that such land was flooded during part of two successive summers, and it seems very likely that it will be flooded in the future. This constitutes a taking of private property for public use and should be given the status of an easement so that the state may have a continuing right to do what it has here done and so that there may be no future objection thereto. A case on all fours with the case at bar (with one exception later noted) is State, by Benson, v. Stanley, 188 Minn. 390, 247 N. W. 509. This case expressly overruled any prior inconsistent decisions and by so doing changed the law in this state. It announced a new rule under which those property owners from whom an easement is taken may find a facile means of reaching the courts and of obtaining just compensation. In the Stanley case, 188 Minn. 390, 247 N. W. 509, the state, in the process of constructing a highway, diverted waters from their natural course and cast them onto defendant's land. The defendant petitioned to have the land so damaged included in the condemnation proceedings, and this court so ordered. What we said there has equal and direct application to the case before us now (188 Minn. 393, 394):

"The showing at the present time is that the state planned and constructed a trunk highway west from Waseca 15 miles and included in the condemnation proceeding lands which it thought necessary, and is making use of defendant's 40, for which it made no compensation. It was proper to include this 40 and to award damages. The state invoked the jurisdiction of the district court to acquire the right of way for the general road project. If the condemnor had been a railroad or a municipality the defendant would

have had a remedy by suit for damages or by injunction. Here he has no remedy by suit for damages. Whether he might have enjoined the use of this 40 by a proceeding against the highway commissioner we do not consider. Since the state has chosen to invoke the jurisdiction of the court in the establishment of a comprehensive trunk highway and has chosen to use and damage the defendant's 40 without condemning it, we hold that the landowner may intervene by motion in the condemnation proceeding and that the court may say to the state that it must bring the land of the defendant, concededly taken and damaged, into the proceeding for the assessment of compensation. And this seems almost a necessary result of the constitutional provisions mentioned. The state cannot, with decent regard for the due process of law provision, and the provision giving everybody a remedy for wrong done his property, and the special provision against the taking of property for public use without compensation, leave out property which it uses or damages in a public project and prevent the owner from having compensation, all because it cannot be sued. If in going west from Waseca the state had left a mile gap in the highway uncondemned but used and then resisted the powers of the court to decree compensation to its owner, its position would be more startling but little different."

The lower court, having decided in the case at bar that the state had acquired an easement on Kopp's property, left the question to the jury as to whether or not Kopp was entitled to compensation therefor; that is, he let the jury determine how much of the damage to Kopp's property was caused by the state's actions in building the bridge and whether the land was of any value before the flooding. This was proper. The court instructed the jury that the state had acquired an easement to flood Kopp's land and that they, the jury, were to determine the difference between the market value of the land before and after the acquisition of the easement and were to award compensation to Kopp for that share of the decrease in market value caused by the building and maintenance of the bridge and the consequent flooding, but not for any decrease in market value due to any other causes such as a faulty ditch, poor

dikes, etc. By finding for Kopp the jury impliedly found all the controverted issues in his favor. The instruction was fair. Under it the jury could have found that the market value of Kopp's land was not decreased if, for instance, they had believed the land to be of no value before flooding, or if they had believed that the flooding did not harm the particular use to which this was put. Also, the jury could have found that the maintenance of this bridge was not the cause of this flooding but that the same was caused by other agencies. In other words, the jury could find that the easement acquired by the state was to be used little or none at all and therefore that the market value was not decreased. This would in effect have been a finding that agencies other than the state caused the damage. The evidence was for the most part conflicting. There was, however, ample evidence to sustain the finding that the land was valuable before it was flooded; that the flooding was not an act of God but was caused by usual rains; that the county ditch was not the cause of the flooding but that the same was adequately and properly constructed and properly maintained.

In my mind there can be little question but that the court had the right to define the easement here in view of the Stanley case, 188 Minn. 390, 247 N. W. 509. The theory of the Stanley decision is that a person who claims that his property is suffering special damage and should be included in the condemnation proceedings may petition the court to include a certain piece or parcel of land therein. If it appears to the court that the property has been taken by the state and damaged, he should declare that the state has acquired an easement thereupon. This action by the court then settles the question for all time and gives the state a perpetual easement on the land for whatever purpose is stated in the decree. In so ordering, the court will not be reversed except for a clear abuse of discretion.

The jury is to determine the amount of compensation to which an owner is entitled, if any, because of the state's acquisition of an easement. This will be determined by taking the difference between the market value of the property before and after the acquisition of the easement by the state. The procedure here outlined

must of necessity prevail if justice is to be done. In the usual case the state will not include such property in its condemnation proceeding. Relegating the owner to the legislature means nothing. So the court should allow such intervention in condemnation proceedings and, of necessity, must determine the extent of the easement. The state is an unwilling party and cannot be expected to define the easement as it does in the usual case. Further, the intervener is a poor judge thereof. So the court must define the easement.

In my belief it was not error to let Kopp intervene even though the final decree in the condemnation proceeding had been rendered some two years previously. Herein lies the only distinction between this case and the Stanley case, 188 Minn. 390, 247 N. W. 509. In the Stanley case the intervener came in before the filing of the final certificate; here the intervener is coming in two years after the filing thereof. Kopp did not have any land condemned, however, and so was in no way officially notified of the proceeding. It cannot be said that he had his chance to have his day in court but did not seize it. Further, the damage resulting from and because of the existence of this easement did not become apparent until 1932 and 1933. The certificate was entered in 1931. Kopp took action as soon as he realized his property had been taken and damaged by the state. He could do no more. I believe the judgment appealed from should be affirmed.