STATE of Minnesota, by its COM-
MISSIONER OF TRANSPOR-
TATION, Respondent,

v.

Gary William KETTLESON, et
al., Respondents Below,

Richard Lepak, Appellant.

No. A09–1894.

Supreme Court of Minnesota.

Aug. 10, 2011.

Lori Swanson, Attorney General, Steven P. LaPierre, Assistant Attorney General, St. Paul, MN, for respondent.

Charles N. Nauen, David J. Zoll, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, for appellant.

## OPINION

MEYER, Justice.

The issue in this case is whether a taking by the Minnesota Department of Transportation (MnDOT) of a portion of appellant Richard Lepak's land to restore highway access to a neighboring parcel constitutes a public use or purpose. The court of appeals affirmed a condemnation order requested by the Commissioner of Transportation for the improvement and widening of Highway 61 in Cook County. Lepak contends that the State does not have a valid public purpose for the taking because part of his land will be used to build a private road to mitigate damages to a neighboring parcel. Because the purpose of the taking in this case meets the definition of " 'public use' or 'public purpose' " as set forth in Minn.Stat. § 117.025, subd. 11 (2010), we affirm.

The Commissioner of MnDOT proposed a $13.1 million transportation project to improve and widen a 3.5–mile portion of Highway 61 in Cook County, Minnesota. The project extends from approximately one mile south of the Onion River to approximately one-half mile north of County Road 34. The project includes improvements to Highway 61's paved surface, changes to improve highway safety through widening the shoulders and the addition of turn and bypass lanes, improvements to a wayside rest, and the

addition of a bike trail on the Lake Superior side of Highway 61. Three parcels are involved in this dispute—Parcel 14, Parcel 15, and Parcel 16.

Parcel 15, an unimproved parcel of land adjacent to Highway 61 in Cook County, is owned by Lepak. The portion of Parcel 15 involved in the proposed taking consists of a 110–foot deep swath of land north of and immediately adjacent to Highway 61 and totals 9,027 square feet. The total size of Lepak's parcel, before any taking, is 104,-544 square feet. The 75 feet of land closest to the highway would be used as part of the reconstruction of the highway; the remaining 35 feet of land would be used to construct a new access road. Lepak is challenging the taking of the 35 feet of land.

The highway improvements would eliminate Parcel 14's existing driveway access to Highway 61 and cause Parcel 14 to become landlocked. As a result, the Commissioner dedicated a 35–foot wide portion of the fee taking from Parcel 15 to build a new access road to the highway.[1] According to the district court, the access road needs to be built across all three parcels "because the rocks and very steep grades along [Highway 61] necessitate a longer access road." The court found that the access road is "absolutely necessary" for Parcel 14 to access the highway and cannot be built on any other parcel.

Lepak, appearing through counsel at the condemnation hearing, objected to the portion of the proposed taking from Parcel 15 that would be used to build the access road, on the grounds that there was no public use or public purpose for the taking. Lepak asserted that the taking from Parcel 15 was improper because it would "con-fer a private benefit" to Parcel 14. Lepak asserted that the taking "would be used to construct a driveway" that would "lead[ ] directly ... to the garage on the existing residence" on Parcel 14. Lepak argued that despite the State's attempts to "justify this proposed taking by referring to the driveway as a public access road," the taking from Parcel 15 "provides what is essentially access to a single private residence." Additionally, Lepak's counsel claimed that Lepak and his neighbors would bear responsibility for maintaining the access road. Lepak introduced no evidence to support any of these claims.

Roberta Dwyer, a MnDOT engineer with 26 years of experience, testified on behalf of the Commissioner that the taking from Parcel 15 was necessary to provide an access road to Highway 61 for Parcels 14, 15, and 16. Dwyer testified that the owners of Parcel 16 had already applied for a permit to connect to the proposed access road. Dwyer also testified that Lepak's proposed alternatives to the location of the proposed access road were not possible because of the area's steep grade, a curve in the road, and an obstructing turn lane into a wayside rest. Dwyer testified that the taking was not for a private purpose. Rather, the taking was reasonably necessary and convenient to serve the public purpose of widening Highway 61. Dwyer was never asked whether Lepak and his neighbors would be required to maintain the access road at their personal expense, whether the access road was a "public" road or "private" drive, or whether the proposed access road would lead directly to Parcel 14's garage.

The district court concluded that improving and widening Highway 61 is "un-

---

1. The State also initiated a taking of a temporary easement north of and immediately adjacent to the permanent fee taking. The taking of this temporary easement, as well as the portion of the permanent fee taking not designated for the access road, are not challenged here.

questionably a legitimate public purpose" and that the Commissioner had established that the access road is reasonably necessary to fulfill the public purpose of improving Highway 61.

The court reasoned that "MnDOT need not establish that the proposed access road, in and of itself, has a public purpose. Instead, MnDOT need only establish that the proposed access road is reasonably necessary to fulfill the public purpose of improving and widening [Highway 61]." Because MnDOT had established reasonable necessity, the district court rejected the challenge to the proposed taking.[2]

A divided court of appeals affirmed in an unpublished opinion. *State ex rel. Comm'r of Transp. v. Kettleson,* No. A09–1894, 2010 WL 2813456, at *1 (Minn.App. July 20, 2010). The majority concluded that "the state provided a valid public purpose for the highway project and showed that the taking was reasonably necessary to further that purpose." *Id.* at *3. The dissent concluded that the government's taking was improper because it was essentially "for a private use to allow only three private parcels access to a public highway." *Id.* at *4 (Ross, J., dissenting). Lepak filed a petition for further review on the issues of whether the taking served a valid public use or public purpose in light of the statutory definitions of those terms, and whether the taking was necessary to accomplish that public use or public purpose. We granted review.

### Eminent Domain Standards

■ Under the U.S. Constitution, private property shall not "be taken for public use, without just compensation." U.S.

Const. amend. V. The Minnesota Constitution similarly provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. Const. art. I, § 13. MnDOT is authorized by the Legislature to condemn property to carry out constitutionally mandated goals. *See* Minn.Stat. § 161.20, subd. 1 (2010). Article 14, section 2, of the Minnesota Constitution creates "a trunk highway system which shall be constructed, improved and maintained as public highways by the state." Minn. Const. art. XIV, § 2. Minnesota Statutes § 161.20, subd. 1, states that the Commissioner of MnDOT "shall carry out the provisions of article 14, section 2, of the Constitution of the state of Minnesota." In line with that directive, "[t]he [C]ommissioner is authorized ... to acquire by purchase, gift, or by eminent domain proceedings as provided by law, in fee or such lesser estate as the [C]ommissioner deems necessary, all lands and properties necessary ... in laying out, constructing, maintaining, and improving the trunk highway system" and "to locate, construct, reconstruct, improve, and maintain the trunk highway system." Minn. Stat. § 161.20, subd. 2 (2010). In this manner, MnDOT acts on behalf of the Legislature, in which the sovereign power to condemn private property is vested, to conduct the essential legislative function at issue in this case. *See State v. Voll,* 155 Minn. 72, 76, 192 N.W. 188, 190 (1923).

By statute, MnDOT is authorized to acquire by eminent domain "all lands and properties necessary ... in laying out, constructing, maintaining, and improving the trunk highway system." Minn.Stat.

---

**2.** The district court initially granted the Commissioner's petition over Lepak's objection to the taking. The court of appeals remanded the case with instructions to the district court to make findings and rule on Lepak's motion.

The district court subsequently adopted MnDOT's proposed findings verbatim, a practice that we discourage. *See C.O. v. Doe,* 757 N.W.2d 343, 347 n. 4 (Minn.2008).

§ 161.20, subd. 2(a)(1) (2010). In addition, when the reconstruction of a trunk highway closes off any other highway or street, including a private road or entrance to the trunk highway, MnDOT "may, in mitigation of damages or in the interest of safety and convenient public travel, construct a road either within or outside the limits of the trunk highway, connecting the closed-off highway, street, private road, or entrance with another public highway." Minn.Stat. § 161.24, subd. 4 (2010). MnDOT also may acquire land by eminent domain for this purpose. *Id.*[3]

In this appeal, the issue is whether the taking of Lepak's land for the access road constitutes a public use or purpose. *See City of Duluth v. State,* 390 N.W.2d 757, 763 (Minn.1986) (noting that historically, "the court has used the words 'public use' interchangeably with the words 'public purpose' "). Lepak is relying on definitions in the 2006 amendments to Minnesota's eminent domain statutes to argue that the taking of his land is not for a public use or purpose. *See* Act of May 19, 2006, ch. 214, § 2, 2006 Minn. Laws 195, 195–97 (codified at Minn.Stat. § 117.025 (2010)). In eminent domain cases arising before the 2006 amendments took effect, this court broadly construed the words "public use" in the Minnesota Constitution. *City of Duluth,* 390 N.W.2d at 763. The 2006 amendments provide a new statutory definition of "public use" or "public purpose" to mean "exclusively":

(1) the possession, occupation, ownership, and enjoyment of the land by the general public, or by public agencies;

(2) the creation or functioning of a public service corporation; or

(3) mitigation of a blighted area, remediation of an environmentally contaminated area, reduction of abandoned property, or removal of a public nuisance.

Minn.Stat. § 117.025, subd. 11(a). With limited exceptions not relevant here, all condemning authorities "must exercise the power of eminent domain in accordance with the provisions of [chapter 117], including all procedures, definitions, remedies, and limitations," notwithstanding any other provision of law, including other statutes. Minn.Stat. § 117.012, subd. 1 (2010).

■ The first step in condemnation cases is to determine whether a project has a valid public purpose or public use. *See, e.g., Itasca Cnty. v. Carpenter,* 602 N.W.2d 887, 889 (Minn.App.1999). The next step in the analysis is whether the taking is reasonably necessary to further that public purpose. *Lundell v. Coop. Power Ass'n,* 707 N.W.2d 376, 380–81 (Minn.2006). The details involved in road construction are details relating to necessity that are subject to limited judicial review. *See Hous. & Redevelopment Auth. v. Minneapolis Metro. Co.,* 259 Minn. 1, 15–16, 104 N.W.2d 864, 874 (1960). This traditional two-step public purpose and necessity analysis was left undisturbed by the 2006 statutory amendments. Importantly, the Legislature did not create a new definition for necessity under the definitional provisions of section 117.025. Therefore, we conclude that the 2006 amendments left intact the public purpose and necessity analysis and the definition of necessity.

The question in this case is whether the Commissioner's condemnation of Lepak's

---

**3.** The statute further provides that "in mitigation of damages," MnDOT "may connect the closed-off private road with the remaining portion of the private road or with another private road," and may acquire by condemnation "[a]ll lands necessary for connecting a highway, street, private road, or entrance to another public highway or for connecting a closed-off private road to the remaining portion of a private road or to another private road." Minn.Stat. § 161.24, subd. 4.

land to build the access road was authorized by the new, exclusive definitions of public purpose under Minn.Stat. § 117.025, subd. 11, and whether the taking is necessary to support the public purpose of improving and widening Highway 61.[4] Lepak asserts that (1) the 2006 amendments have reduced the amount of deference this court gives to a condemning authority, (2) the access road in this case does not fit any of the statutory definitions of "public use" or "public purpose," and (3) the district court erred in concluding that the taking was necessary to support a public purpose.

## I.

It is well established that "the district court gives deference to the legislative determination of public purpose and necessity of the condemning authority." *Lundell*, 707 N.W.2d at 381. The scope of judicial review of a determination of public purpose by a condemning authority is very narrow. *Id.* at 380–81. This is because the condemning authority's determinations are regarded as legislative decisions that will be overturned only when they are "manifestly arbitrary or unreasonable." *Id.* at 381 (quoting *Hous. & Redevelopment Auth.*, 259 Minn. at 15, 104 N.W.2d at 874). Decisions are manifestly arbitrary or unreasonable " 'where they are taken capriciously, irrationally, and without basis in law or under conditions which do not authorize or permit the exercise of the asserted power.' " *City of Pipestone v. Halbersma*, 294 N.W.2d 271, 273–74 (Minn.1980) (quoting *Hous. & Redevelopment Auth.*, 259 Minn. at 15, 104 N.W.2d at 874).

In this appeal, Lepak argued that case law relating to eminent domain, such as *Lundell* and *City of Duluth*, no longer applies because those cases were decided under the prior, broader definitions of public use and public purpose. The court of appeals disagreed, stating that "[s]ince the 2006 amendments, those cases continue to be cited positively" by Minnesota appellate courts. *Kettleson*, 2010 WL 2813456, at *1. Therefore, although the court of appeals acknowledged that it "is required to apply the statutory definition of public use and public purpose in the current version of the statute," the court of appeals indicated that Lepak "has not shown that these earlier cases are not good law that instruct our analysis and provide our standard of review." *Id.* at *2.

We agree with the court of appeals that the 2006 changes have not affected the broad deference we give to the condemning authority. *Id.* at *1. MnDOT has been specifically authorized by the Legislature to condemn property directly on its behalf under Minn.Stat. § 161.20, subd. 1. The amendments do not change the *nature* of the governmental action, which remains legislative. When we read section 161.20, subdivision 1, and section 117.025, subdivision 11, together, we conclude that MnDOT has authority to condemn property directly, and that authority must be exercised for the public use or public purpose set out in section 117.025. Nothing in Minn.Stat. § 117.025, subd. 11, disturbs the long-standing principle of deference by the courts to the Commissioner's legislative decision-making in condemning private property to build highways. The judiciary maintains its traditional role to ensure

---

4. The parties do not argue, and we do not decide whether the Legislature's definition of "public purpose" under the statute is inconsistent with our interpretation of the meaning of "public use" under article I, section 13, of the Minnesota Constitution and whether that would make a difference.

that government takings "are within such discretionary power rather than an arbitrary or discriminatory exercise of the legislative prerogatives, particularly where such enactments destroy valuable property rights of citizens guaranteed protection under the due process and equal protection clauses of the state and Federal constitutions." *Pearce v. Village of Edina*, 263 Minn. 553, 571, 118 N.W.2d 659, 671 (1962).

## II.

■ We turn to the question of whether the Commissioner's purpose in condemning the land fits within any of the statutory definitions of public use or purpose. Lepak claims that the purpose of the taking of the specific property at issue here, which he claims is "to solve a private problem caused by the highway reconstruction project," must be separated from the public purpose of the highway reconstruction project as a whole. The Commissioner counters that Lepak's claim that MnDOT must establish a public purpose for each individual aspect of the project is "fundamentally flawed." Instead, the Commissioner asserts, this court asks whether a project taken as a whole has a valid public purpose or public use.

The object of all statutory interpretation and construction "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). A statute is read "as a whole" and each section is interpreted "in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). When "the words of a law are not explicit," this court may consider, among other things, the object to be obtained by the law, prior versions of the law, and the circumstances surrounding the law's enactment. Minn.

Stat. § 645.16; *In re 2010 Gubernatorial Election*, 793 N.W.2d 256, 261 (Minn.2010).

Under the new statutory definition for taking, public use and public purpose means "the possession, occupation, ownership, and enjoyment of the land by the general public, or by public agencies." Minn.Stat. § 117.025, subd. 11(a)(1). We conclude that the access road at issue in this case falls squarely within the meaning of subdivision 11(a)(1), and thus we need not decide whether the project must be viewed as a whole or whether each individual aspect of the project must be examined for a public purpose.

First, MnDOT is a public agency charged with the development, implementation, administration, consolidation, and coordination of state transportation policies, plans, and programs. Minn.Stat. § 174.01 (2010). The improvement of Highway 61 is without question a transportation plan with the over-arching purpose of providing a public benefit.

Second, the petition seeks an order from the district court transferring title and possession of parts of the parcels to MnDOT, satisfying the "possession, occupation, ownership, and enjoyment of the land by the general public, or by public agencies" requirement of section 117.025, subdivision 11(a)(1). The petition does not seek to transfer any of Lepak's land to a private party.

Third, the evidence at the hearing demonstrates that the enjoyment of the access road is established to be for the general public. The access road unquestionably lies within the limits of the public right-of-way. The road provides abutting owners of three separate parcels with a means of access to Highway 61. The record contains no evidence to suggest that members of the public are not free to drive upon the access road. No evidence establishes that the owners of the three separate parcels

have any obligation to maintain the access road. While no single fact is controlling, we conclude, on the record before us, that MnDOT has demonstrated a proper public purpose for the taking.

Our decision is limited to the facts of this case. We do not decide whether the new definition of public purpose has invalidated the statutory provisions that allow the Commissioner to condemn land "necessary for connecting" a private road that is closed off by the highway project. *See* Minn.Stat. § 160.18, subd. 2 (2010) (requiring road authorities reconstructing highways to "construct suitable approaches thereto within the limits of the right-of-way where the approaches are reasonably necessary and practicable, so as to provide abutting owners a reasonable means of access to such highway"); Minn.Stat. § 161.24, subd. 4 (providing that when the reconstruction of a highway closes off a private road, MnDOT may condemn "all lands necessary" for connecting a closed-off private road to the highway). Additionally, we do not decide whether land may be taken to build a private road as part of a highway project, so long as the project "taken as a whole" has a valid public purpose or public use.

### III.

Having determined that MnDOT has demonstrated a proper public purpose for the taking under Minn.Stat. § 117.025, subd. 11, we next consider whether MnDOT has satisfied its burden of demonstrating that the proposed taking is necessary to accomplish that public use or purpose. More narrowly, we consider whether the taking was reasonably necessary or convenient for the furtherance of its purpose. *Lundell*, 707 N.W.2d at 381. In cases arising before the 2006 amendments, we have concluded that "the requisite necessity" for a taking to accomplish

a public purpose "is not absolute necessity"; rather, "[i]t is enough to find that the 'proposed taking is reasonably necessary or convenient for the furtherance of a proper purpose.'" *City of Duluth*, 390 N.W.2d at 764–65 (quoting *Halbersma*, 294 N.W.2d at 274); *accord Lundell*, 707 N.W.2d at 381. The court of appeals correctly applied this standard. *Kettleson*, 2010 WL 2813456, at *3. On appeal, Lepak suggested possible alternatives to MnDOT's proposed access road. The court of appeals concluded that there was no evidentiary support for the alternative routes. *Id.* at *4. Further, the court concluded that Lepak had not shown that MnDOT's decision to take his property for the proposed access road was arbitrary and capricious. *Id.* at *3. We agree with the court of appeals. On the record before us, we cannot conclude that the district court erred in concluding that the taking was reasonably necessary to further a valid public purpose.

Affirmed.